McRAE, Justice,
for the Court:
Nearly six years have passed since this Court disbarred Petitioner Bud Holmes from the practice of law. During those years, Holmes has striven to reassemble the shards of his shattered career and to rebuild a reputation worthy of his chosen profession. The Court is surrounded by a cloud of eminent and faithworthy witnesses who personally attest to Holmes’ repentance and reformation. The Bar has produced not one shred of evidence to the contrary. We have in the past readmitted petitioners under far more questionable circumstances. Having carefully reviewed the record in light of our precedents, we hold that justice would best be served by granting Holmes’ petition for reinstatement.
Holmes was disbarred on December 3, 1986. See Holmes v. Mississippi State Bar Assn., 498 So.2d 837 (Miss.1986). The disbarment was based on Holmes’ plea of guilty to a misdemeanor contempt of court charge resulting from his failure to provide information to a grand jury in the investigation of former District Court Judge Walter L. Nixon.
Holmes filed his petition for reinstatement on June 27, 1990, more than three years after the order of disbarment as required by Rule 12.1 of the Rules of Discipline. The petition addresses each of the areas of content required by Rule 12.7. Rule 12.7 provides:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law. Upon filing, the petition shall be served on, and an investigatory fee of $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner’s improper conduct. The matters set out in this paragraph shall be jurisdictional.
In response to these requirements, Holmes’ petition alleges that:
(1) he was disbarred for pleading guilty to a violation of 18 U.S.C. § 401(1);
(2) there were no persons or entities who suffered pecuniary loss due to Holmes’ conduct;
(3) the nature of the offense required no amends or restitution; and
(4) there are two major reasons justifying reinstatement: (a) the nature of the offense committed, and (b) his conduct since committing the offense.
Holmes petition states that he does not “challenge his disbarment,” that he “acknowledges the error and wrong he committed before the Federal Grand jury,” and that he has “sought to conduct himself in such a manner as to atone for his mistake and to be eligible for reinstatement to the practice of law.”
The evidence clearly shows a change of heart subsequent to the contempt conviction. Peter E. Keith, former Assistant Special Counsel to the Committee on the Judiciary, U.S. House of Representatives, writes:
During the impeachment investigation [of former Judge Walter L. Nixon], I interviewed Paul H. Holmes at great length on several different occasions. Mr. Holmes appeared voluntarily for these interviews, at his own expense, and cooperated with the Committee’s investigation. Mr. Holmes also voluntarily appeared as a sworn witness, without subpoena, during impeachment hearings before the House in June, 1988, and testified again under oath at trial before the Senate Impeachment Trial Committee in September, 1989. During his interviews and his House and Senate testimony, Mr. Holmes freely admitted the crime to which he previously pled guilty and showed remorse for that past misconduct.
Holmes’ reinstatement has received the unqualified endorsement of notable witnesses closer to home. Holmes’ pastor of seven years states:
*849 I do understand Mr. Holmes became involved in personal and professional difficulties. During this time I was able to talk on several occasions with him and he expressed a deep remorse as to mistakes that had been made and also expressed to me a sincere desire to serve people through the practice of law.
Lynn Cartlidge, President of the Forrest County Board of Supervisors, advises the Court that
[I]n my opinion Paul H. Holmes has the moral character and legal knowledge to practice law in the State of Mississippi. I have personally known Mr. Holmes for many years and know that during the years since his disbarment, he has demonstrated a desire to be a credit to the community and to the legal profession and has been active in community affairs. If he is reinstated, I am certain he would conduct himself on a high professional level.
Forrest County Sheriff Gene Walters notes that Holmes
has been and is one of the strongest supporters of impartial law enforcement in Forrest County, Mississippi. On numerous occasions he has personally sponsored gatherings of all law enforcement agencies in Forrest County to foster communication among the groups and to increase efficiency.
During the past three (3) years he has continued to support my office in its efforts to obtain impartial and fair law enforcement.
I have always known Bud Holmes to be honest, trustworthy and dependable. His contributions to local law enforcement have not been surpassed.
Paul W. McMullan, a Hattiesburg businessman writes:
I have come to know Bud as a man of his word, reliable, honest and dependable in every one of his business transactions with me. I have seen him expend his personal assets to assist many who were in financial difficulty for no purpose but to help a friend in time of financial need. During the period of Bud’s disbarment he has applied himself to business inter-
ests. One of his endeavors has been the development of water resource interests in the State of Colorado and I have been one of his associates in this venture. Consequently, I can personally attest that he applied himself to gainful and honest business endeavors while prevented from practicing law.
Holmes receives similar unconditional, endorsements from Forrest County Chancery Clerk Jimmy C. Havard, from Forrest County Circuit Clerk Marian Brown, and from Hattiesburg Mayor J. Ed Morgan. Among the lawyers submitting letters of recommendation were two District Attorneys (Glenn White and Ed Peters), an Assistant District Attorney (Cliff Gaddis), and two members of Complaint Tribunals (Michael McMahan and Hal Freeland). In a virtually unprecedented move, numerous members of the Mississippi and Forrest County Bars and the Mississippi Trial Lawyers Association, including some of the most esteemed attorneys in our State, signed a resolution stating:
We ... do hereby express our opinion that Paul H. Holmes has the requisite moral character and legal learning to practice law in the State of Mississippi and do hereby request the Mississippi Supreme Court to grant the petition of Paul H. Holmes for reinstatement to the practice of law.
Even the Bar’s own investigation supports the reinstatement of Holmes. In its Answer to Holmes’ Petition, the Bar acknowledges that its investigation revealed:
(1) that Holmes has engaged in several successful business ventures subsequent to his disbarment;
(2) that Holmes has been involved in various civic affairs including the Cystic Fibrosis Foundation and the Ha-las/Peyton Foundation, an organization that helps older NFL players and individual causes such as the “Chucky” Mullins Fund;
(3) that according to Holmes, he has kept abreast of legal trends and developments by reading state and federal advance sheets, by conversing with practicing attorneys; and by attending *850 CLE events including a twelve-hour seminar held on December 2-3, 1988 sponsored by the South Carolina Trial Lawyers Association in cooperation with the Mississippi Trial Lawyers Association on the subject of Auto Torts; a six-hour seminar sponsored in early 1989 by the Mississippi Trial Lawyer’s Association, and a six-hour seminar on federal court practice and procedure sponsored on December 15, 1989, by the Southeast Mississippi Legal Services Corporation; and
(4) that Holmes has expressed a willingness to attend additional CLE seminars as a condition of reinstatement and to take the Professional Responsibility part of the Bar Exam, or even the entire Bar exam, if so directed by the Court.
The Bar’s answer is utterly devoid of factual grounds for denying Holmes’ petition. The response merely concludes that the petition should be rejected “because of the nature of the offense to which he pled guilty and his lack of proof that he now possesses the requisite moral character to be reinstated to practice law.” The Court is thus confronted with a situation similar to the one we faced in Haimes v. Mississippi State Bar, 551 So.2d 910 (Miss.1989), wherein we observed:
When ... the Bar filed its response, no specific grounds for denial of reinstatement were offered, only a vague and conclusory denial that Haimes has “presented sufficient evidence of requisite legal learning and requisite moral character, or any other reason justifying reinstatement” which, of course, tells us next to nothing.
Haimes, 551 So.2d at 913.
The Bar notes that in Jennings v. Mississippi State Bar, 533 So.2d 443 (Miss.1988), this Court stated that it was “inclined to agree with the Bar’s position” that no attorney should be readmitted who has been convicted of one or more felonies. The Jennings dicta, regardless of its worth, is irrelevant here since Holmes was convicted of a misdemeanor, not a felony.
The Bar has produced nothing in mitigation against reinstatement. Over a year ago, the Bar forwarded to this Court copies of the complaints in five civil lawsuits which were allegedly filed against Holmes and a business concern in Louisiana with which he has been associated. The complaints allege, inter alia, fraud and breach of fiduciary duty. These charges are irrelevant to our decision in the instant case, however, for one of the most elementary rules of evidence holds that the averments of a complaint are mere allegations and may not be considered as proof. See Fisher v. Crowe, 289 So.2d 921, 923 (Miss.1974) (allegations in pleadings have no probative value but must be supported by proof). Since bringing the Louisiana complaints to our attention, the Bar has had over a year to supplement their response with hard facts. In Haimes we held:
Where ... a person petitions for reinstatement, the Bar is allowed a reasonable time for response, but the Bar at the same time has a responsibility to proceed with diligence and dispatch and detail. If there be substantial reasons (unrelated to the conduct for which the suspension was originally imposed) why the suspended attorney should not be reinstated, it is incumbent upon the Bar to advise this Court of those facts with specificity.
Haimes, 551 So.2d at 913.
If the proceedings in Louisiana had unearthed anything reflecting adversely upon Holmes’ reputation, then the Bar had a duty to advise this Court “with diligence and dispatch and detail.” The Bar has produced absolutely nothing of the sort, so we must presume that no damaging facts have come to light.
Clearly, the evidence weighs overwhelmingly in favor of Holmes’ reinstatement. Holmes has produced a wealth of proof in support of his petition; the Bar has shown us nothing in rebuttal. In fact, Holmes has presented a much stronger case for reinstatement than have many attorneys in past cases where we have granted reinstatement. In Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss.1980), attor *851 ney Rubel L. Phillips was disbarred after being convicted on nine felony counts of deceiving and conspiring to defraud the United States Government, acts that clearly involve moral turpitude. According to Second Circuit Court of Appeals in United States v. Stirling, 571 F.2d 708 (2d Cir.1978), Phillips “played the key role” in orchestrating a 115-million-dollar fraud involving contracts to obtain federal funds for housing projects. Three years later, this Court reinstated him in Phillips v. Mississippi State Bar, 427 So.2d 1380 (Miss.1983). This Court, in assessing the petitioner’s conduct subsequent to his nine felony convictions, found that Phillips
has conducted himself in a matter beyond criticism; that he has been able to obtain employment and has supplied the needs of his family; that he has continued to be active in community and civic activities and has been a good citizen during the period of his disbarment; and that, if he is reinstated, he will be a valuable member of the Mississippi State bar in the future and will conduct himself in such was as to be a credit to the Mississippi State Bar and to the State of Mississippi.
Phillips, 427 So.2d at 1381.
In Mississippi State Bar v. Gautier, 538 So.2d 772 (Miss.1989), this Court considered after less than five years the reinstatement petition of an attorney who had been disbarred upon conviction of possession of cocaine, a felony. In his petition, Gautier alleged that he had studied the Rules of Professional Conduct, attended a CLE seminar, submitted himself to treatment for drug addiction, and that he had a continuing relationship with Alcoholics Anonymous and Narcotics Anonymous. Attached to his petition were letters of recommendation from friends, employers, attorneys, pastors and public officials along with a work history since disbarment. The Court ordered reinstatement, finding that Gautier
had overcome his drug addiction and has, since his disbarment, worked honestly and steadfastly to rehabilitate not only himself but others with whom he has come in contact. He has tried to keep abreast of legal developments and has tried his best to provide financially for his family.
Gautier, 538 So.2d at 775.
In Confidential Mise. No. 158, this Court in 1983 disbarred a district attorney following his felony conviction for obstruction of a criminal investigation. In 1988, the attorney filed a petition for reinstatement, attaching thereto letters of recommendation similar in substance to those proffered by Holmes. In Case No. CM-158(R1), this Court ordered reinstatement. The Court found that the attorney
has rehabilitated himself, has become a responsible and participating citizen in his community and has studied and maintained his knowledge of the law. Moreover, the Mississippi State Bar has conducted an investigation into this matter and has reported to the Court that ... [the attorney] “has worked hard and diligently” to rehabilitate himself and has recommended that he be reinstated as a member of the Bar, provided that he take the Multi-State Professional Responsibility Exam ... and achieve a scale score of not less than eighty (80).
The list could go on and on. Suffice it to say, however, that this Court has on numerous occasions reinstated disbarred attorneys under circumstances less favorable than those now before the Court.
The nine felonies Phillips committed, all involving moral turpitude, were much more egregious than the misdemeanor for which Holmes suffered disbarment. Despite the magnitude of Phillips’ offenses, this Court readmitted him upon a showing that he had “been able to obtain employment,” that he had “supplied the needs of his family,” that he was “active in community and civic activities,” and that he had been a “good citizen.” The reinstatement occurred only three years after Phillips was disbarred. The unrefuted proof in the record now before us demonstrates substantially the same facts that Phillips established plus much more.
Both Gautier and the unnamed attorney in Case No. CM-158(R1) also committed acts more nefarious than Holmes’ misdeed. *852 The unnamed attorney’s offense, in fact, was particularly disgraceful since he was a public official charged with prosecuting criminals at the time when he committed his crime. Yet both Gautier and the unnamed attorney were, like Phillips, readmitted in relatively short order upon records containing less proof than the one now before us.
Holmes has presented at least as much evidence in favor of reinstatement as did Phillips, Gautier, and the unnamed attorney of Case No. CM 158(R1), and the crime for which Holmes was disbarred is less serious than than the those that Phillips, Gautier, and the unnamed attorney committed. Ours is a system based on judicial precedent, and our previous reinstatement cases sonorously demand that Holmes be reinstated.
We do, however, require that Holmes take and pass the Board of Bar Admissions’ special ethics exam as a condition for his return to the practice of law. We note that Holmes as gratuitously offered to take the entire bar exam. However, the misdeed for which he was disbarred had nothing to do with his skill or competence as an attorney, so we see no good reason to require him to demonstrate his general knowledge of the law. It is therefore the judgment of this Court that petitioner Paul H. Holmes should be reinstated as a member of the Mississippi Bar in good standing, subject to his passing the Board of Bar Admissions’ special ethics exam.
PETITIONER REINSTATED TO PRACTICE OF LAW ON CONDITION THAT HE TAKE AND PASS THE BOARD OF BAR ADMISSIONS’ SPECIAL ETHICS EXAM.
DAN M. LEE, P.J., and PITTMAN, J., concur.
ROBERTSON, J., concurs by separate written opinion.
BANKS, J., concurs with separate written opinion.
ROY NOBLE LEE, C.J., dissents with separate written opinion joined by HAWKINS, P.J., and PRATHER, J.
SULLIVAN, J., not participating.