656 So.2d 799 (1995)
In re the Matter of the REINSTATEMENT OF James Russell TUCKER.
No. 94-BR-00902-SCT.
Supreme Court of Mississippi.
April 20, 1995.
Rehearing Denied July 20, 1995.
*800 James D. Holland, Upshaw Williams Biggers Page & Kruger, Jackson, J. Michael Tibbals, Arter Hadden Johnson & Bromberg, Dallas, TX, for petitioner.
Michael B. Martz, Jackson, for respondent.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. PROCEDURAL HISTORY
James Russell Tucker's disbarment from the practice of law in this state was affirmed by this Court in March 1991. See Tucker v. Mississippi State Bar, 577 So.2d 844 (Miss. 1991). This Court agreed with the Complaint Tribunal of the Mississippi State Bar that Tucker had violated DR1-102(A)(1, 4, 5 and 6), DR2-106(A), DR7-101(A)(1 and 3), and Miss. Code Ann. § 73-3-35 (1972). Tucker, 577 So.2d at 848. On September 13, 1994, Tucker filed his Petition for Reinstatement pursuant to Rule 12 of the Rules of Discipline for the Mississippi State Bar. On November 21, 1994, the Bar filed its Answer to Tucker's Petition, opposing reinstatement.

II. THE FACTS SURROUNDING DISBARMENT
In September 1985, while an associate at the firm of Copeland, Cook, Taylor and Bush in Jackson, Mississippi, Tucker agreed to represent two individuals, Tollison and Clinard, in a claim against other individuals and the executors of Tollison's and Clinard's grandfather's estate. Tucker negotiated a settlement, pursuant to which Tollison and Clinard quitclaimed their shares of the estate to the executors in exchange for $68,575.00 for each share. In March 1986, Tollison and Clinard gave Tucker two $24,000.00 personal checks for his attorney fees, payable to Tucker, which he accepted and deposited into his personal checking account without informing his firm of his receipt of the funds.
From March 1986 through May 1986, total deposits to Tucker's checking account were $48,000.00  his fees from Tollison and Clinard. During this same quarter, Tucker wrote checks totalling $45,060.29 and was charged a $5.00 service fee. Prior to deposit of the fees from Tollison and Clinard, Tucker's account had a balance of $32.97. The checks written by Tucker and paid from his deposit of attorney fees were for personal expenses, primarily to credit card companies and student loan servicers.
In May 1986 the attorney for a timber company, which planned to purchase timber from the land quitclaimed from Tollison and Clinard to the estate, discovered a mistake in the quitclaim deeds' legal descriptions. The executors requested correction deeds from Tollison and Clinard, which Tucker attempted to obtain in June 1986. Tollison, however, was not cooperative, as she had reservations about Tucker's handling of the case and the amount of the fee charged. Tollison engaged another lawyer, Timothy Gowan, who approached the firm of Copeland, Cook, Taylor and Bush about Tucker's handling of this matter. The firm was unaware of the case *801 and of Tucker's receipt of the fee until informed by Gowan. In October 1986 Tucker tendered to the firm two certified checks, each in the amount of $24,000.00. Shortly thereafter, Tucker left Copeland, Cook, Taylor and Bush. Tollison and Clinard filed suit against Tucker and his former firm; the case was settled out of court and dismissed with prejudice.
In late 1986 Tucker moved to Texas and began to practice law there in January 1987 with the firm of Goins, Underkofler, Crawford & Langdon. The grievance was initially filed against Tucker in Mississippi in October 1987. In June 1988, Tucker voluntarily left the Goins firm and joined the firm of Vetter, Bates, Tibbals, Lee & DeBusk in Dallas, Texas. In 1989 the Goins firm merged with Godwin & Carlton, P.C.. In 1992, Tucker voluntarily left this firm to begin his own practice.

III. POST-DISBARMENT CONDUCT
Tucker has continued to practice law in Texas since his disbarment in Mississippi. He was admitted to the State Bar of Texas in 1987 pursuant to the existent reciprocity between Texas and Mississippi. As a result of this reciprocity, Tucker is subject to pending reciprocal disciplinary action in Texas. At present, the Texas disciplinary action is stayed pending this Court's decision regarding Tucker's reinstatement. Tucker's response to the show cause order, filed in the District Court of Dallas County, Texas, in March 1992, arguing against reciprocal disbarment in Texas, is revealing. Some excerpts follow.
At long last, Respondent is finally able to present this disciplinary dispute before an impartial tribunal and have the opportunity to clear his name in connection with this matter once and for all.... Respondent was disbarred by three gentlemen who constituted what is commonly referred to in Mississippi now as the "hanging judge" panel, and the Mississippi Supreme Court, again without any evidentiary hearing or granting Respondent the opportunity to be heard by way of oral argument, issued a "rubber stamp" to the administrative tribunals' [sic] decision without even bothering to write its own opinion... . if the court [Supreme Court of Mississippi] had reviewed the record at all, it would have discovered that the order entered by the administrative tribunal was filled with conclusory allegations and suppositions which were never proven and could not be proven before a court of law or a jury.
* * * * * *
... there was such an infirmity of proof which purportedly established the misconduct as to give rise to the clear conviction that this Court [Texas court] could not, consistent with its duty, accept as final the conclusion of the Mississippi administrative tribunal.
* * * * * *
... the alleged misconduct, if it is assumed there was misconduct... . Here, Respondent did not steal any money from his clients, his law firm or from anyone.
* * * * * *
Respondent was disbarred in Mississippi for temporarily placing money in his personal account before delivering it to his law firm, and for charging and collecting a contingent fee in a case pursuant to an agreement which was voluntarily agreed to by both Respondent and the client and was the routine contingency fee agreement utilized by his law firm.
* * * * * *
Respondent's intention, of course, was simply to deposit the checks into his account, allow sufficient time for them to clear, and in turn, have checks made payable to the firm showing Tollison and Clinard as payors. Respondent, being an inexperienced attorney, only three years out of law school, and handling his first client that had come directly to him, saw nothing wrong with this for the obvious reason that he never intended to keep the money. He knew the firm would trust his judgment in handling the matter the way he did after disclosure of all facts.
* * * * * *
... what Respondent thought was only going to be a matter of a few days to *802 resolve back in March when he received the attorneys' fees and the checks cleared (and he could give the firm the money and nobody would know anything about anything going wrong), he found himself in a situation where days turned into weeks and weeks into months before the matter could be resolved.
* * * * * *
Thus, Respondent was disbarred based upon supposition and no evidence whatsoever being presented as to Respondent's intent to take the money.
* * * * * *
The administrative tribunal was a total farce from the beginning as much of the testimony adduced was based on hearsay and many of the conclusions drawn in the Order of the tribunal were mere suppositions or based upon the opinions of members of the tribunal that Respondent "had to know" certain things at certain points in time with no proof whatsoever because there was none.
The unfortunate and ironic thing which has occurred in this matter is that Respondent is the only one who has suffered any consequence at all from what has happened in this case.
* * * * * *
Respondent submits that the reason these and other pertinent facts were not properly investigated by the State Bar of Mississippi is because the attorney for the general counsel's office had a personal vendetta against Respondent for some reason. It was very clear to Respondent and others involved in the proceedings that the attorney for the state bar handling this case had a chip on his shoulder due to a physical deformity which prevented him from practicing in private practice, and he resented Respondent's status having risen to making a lot of money in Texas by the time this matter came to trial.
* * * * * *
... there was a feeling among some that there was pressure upon the state bar to dish out the harshest sentence possible in order to set an example because no one had been disbarred in a while. The perfect situation was presented by Respondent in that because he was then practicing in Texas, they could disbar him and not have to "look him in the face" everyday and see the resulting destruction of a career first hand. It is always easier to do that to someone when you don't have to see or hear from them again.
* * * * * *
... certainly there are ways the trap in which Respondent was caught could have been avoided had he handled matters differently.
* * * * * *
In fact, the firm [Copeland, Cook, Taylor and Bush] was very supportive of Respondent after learning of the facts relating to this matter and the "white trash" that Respondent had represented in connection with this matter.
* * * * * *
... they [the administrative tribunal and the Supreme Court of Mississippi] appeared to resent the fact that Respondent had gone to Texas and started a new career and done very well for himself in the State of Texas. Respondent's attorney in Mississippi advised him many times that he thought one of Respondent's main problems was that the people setting [sic] on the administrative tribunal were earning a very small sum of money compared to the success Respondent had enjoyed in Texas.
Response to Order to Show Cause, pp. 1-35.
In September 1992 Tucker apparently amended this Response by "merely delet[ing] portions of two pages in the Response." (Tucker's letter to State Bar of Texas) However, no amended Response could be located by the Texas Bar. (General Counsel, State Bar of Texas, letter to Michael Martz, General Counsel, The Mississippi Bar) As evidenced by the excerpts quoted above, even with deletions from two pages of Tucker's Response this document indicates that he feels he was wronged by the Mississippi disbarment procedures and his clients.
Tucker has submitted over 100 letters in support of his reinstatement as appendices to *803 his Petition. These letters are authored by Texas District Court Judges, current Texas clients, attorneys with the law firms Tucker worked for in Texas, other Texas attorneys with whom Tucker is acquainted, Tucker's secretary/legal assistant, his current wife, professors at the University of Mississippi School of Law, former law school classmates, Mississippi attorneys with whom Tucker was acquainted, and a friend and former client.

IV. THE LAW AND ANALYSIS
"The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys, and hereafter such proceedings shall be conducted in accordance with these rules." Rule 1, Rules of Discipline for the Mississippi State Bar. See also Matter of Reinstatement of Nixon, 618 So.2d 1283, 1287 (Miss. 1993) ("`[n]o person suspended or disbarred shall be reinstated to the privilege of practicing law except upon petition to the Court.'").
Rule 12.1 provides: "The petition for reinstatement shall not be filed until three (3) years after the date the order of disbarment became final." Tucker's Petition was filed just over three years after this Court affirmed his disbarment.
Rule 12.7 reads:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law. Upon filing, the petition shall be served on, and an investigatory fee of $500.00 shall be paid to the Bar, same to be in addition to any other sum due the Bar, or persons injured by the petitioner's improper conduct. The matters set out in this paragraph shall be jurisdictional.
See The Matter of the Reinstatement to Practice Law of Douglass Talmadge Baker, 649 So.2d 850, 853 (Miss. 1995) (if full amends and restitution have not been made, this Court will dismiss on jurisdictional grounds[1]); Jennings v. Mississippi State Bar, 533 So.2d 443, 444 (Miss. 1988) (this Court dismissed petition for reinstatement on jurisdictional grounds, stating that requirements of Rule 12.7 had not been met).
Tucker's Petition for Reinstatement is addressed to this Court and states the causes for disbarment. Tucker's Petition further states that no pecuniary loss was involved, therefore no restitution was required.[2] As reasons justifying reinstatement, Tucker asserts that: all firms in Texas with which he was affiliated support his reinstatement; his current Texas clients would be adversely affected if his petition is denied because he is subject to reciprocal discipline in Texas; his family and his legal secretary/legal assistant would suffer financial hardship if he is not reinstated; his family name and his own reputation would remain tarnished without reinstatement; and he no longer contests disbarment as the appropriate sanction[3].
Regarding the requisite legal learning for reinstatement, Tucker points to the more than 100 letters supporting his reinstatement, some of which praise his legal abilities, and adds that he will sit for the Mississippi Bar Exam if requested to do so. In further support of his legal learning, Tucker notes that he practiced for almost five years in Mississippi at two well known Jackson law firms  Heidelburg & Woodliff and Copeland, Cook, Taylor and Bush  and that his eight years of practice in Texas have also benefitted him as Texas and Mississippi laws are *804 "very similar in many respects." As noted by the Bar, if Tucker's reinstatement should otherwise be granted, the issue of his requisite legal learning will be resolved by his taking the Mississippi Bar Exam, pursuant to Rule 12.5.
The Bar states that Tucker has failed to comply with this Court's disbarment order to the extent that he has not provided affidavits certifying that he notified his Mississippi clients, the Mississippi courts, and the Bar of his disbarment. The record does not reveal any such affidavits, although this Court did order him to provide same. See Tucker, 577 So.2d at 849. The Bar alleges this is sufficient to deny Tucker's reinstatement on jurisdictional grounds.
The requirements enumerated in Rule 12.7 are jurisdictional; failure to meet these requirements is cause to dismiss the petition. Jennings, 533 So.2d at 444. However, Rule 12.7 does not mention compliance with this Court's order of disbarment. This Court has previously forgiven noncompliance with its order of suspension on a subsequent petition for reinstatement. In re Reinstatement of License to Practice Law, Robert D. Underwood, 649 So.2d 825 (Miss. 1995) (Underwood had engaged in three instances of practicing law while under an order of suspension issued by this Court, yet was reinstated upon petition). Nonetheless, compliance with the portion of this Court's order of disbarment requiring production of affidavits would be required as a condition precedent to reinstatement if reinstatement should otherwise be granted.
This Court has recognized a distinction between suspension and disbarment: "Implicit in the judgment of suspension, stopping short of disbarment, is that the attorney's character has not been shown so deficient that proof of general moral and professional rehabilitation is required." Haimes v. Mississippi State Bar, 551 So.2d 910, 912 (Miss. 1989). Consequently, when an attorney has been disbarred rather than suspended, "[t]he fundamental question to be addressed before reinstatement is the attorney's rehabilitation in conduct and character since disbarment." Burgin v. Mississippi State Bar, 453 So.2d 689, 691 (Miss. 1984) (citing Mississippi State Bar Association v. Wade, 250 Miss. 625, 167 So.2d 648 (1964)).
"[A]ll that is required to show a rehabilitated character is: `[a] firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed.' Phillips v. Mississippi State Bar, 427 So.2d 1380, 1382 (1983) (emphasis added) quoting Ex Parte Marshall, 165 Miss. 523, 556, 147 So. 791, 798 (1933)." Holmes v. Mississippi Bar, 602 So.2d 847, 854 (Miss. 1992) (Lee, C.J., dissenting). In Reinstatement of Baker, the evidence submitted in support of rehabilitation and found sufficient included letters from attorneys and community leaders, participation in community activities, post-disbarment employment, and recognition of the wrongs committed. Reinstatement of Baker, 649 So.2d at 854.
As evidence that he has the requisite moral character to be reinstated, Tucker cites the more than 100 letters submitted in his behalf. These letters, of course, speak of Tucker's good character, high ethical standards, care and concern and good results obtained for his clients, and frequent reduction of his attorney fees. Tucker's Petition for Reinstatement asserts that since his disbarment he has supported his Mississippi alma mater, donated money to legal services for the poor in Texas, and made donations to his church and charities. Unlike the evidence presented in Nixon, there is no evidence that Tucker immersed himself in charitable endeavors. Then again, unlike the facts in Nixon, Tucker has not been deprived of his income, his pension, his home, his insurance coverage, nor the privilege of practicing law. And the requirement is only that one seeking reinstatement must lead a correct life. Phillips v. Mississippi State Bar, 427 So.2d 1380, 1382 (1983) (quoting Ex Parte Marshall, 165 Miss. 523, 556, 147 So. 791, 798 (1933)).
The Response Tucker filed to the show cause order in Texas in March 1992 indicates that he feels he was wrongly disbarred because he innocently fell into a trap set by his uncooperative clients and because the Complaint Tribunal, General Counsel for the Bar, *805 and this Court did not treat him fairly. His Response also allows that "based upon what he now knows, there are certainly ways he could have handled the matter differently and should have handled it differently." Furthermore, "Respondent has indeed learned a valuable lesson to the extent of turning down cases for people he does not know or conduct some investigation into their background to determine whether or not they are reputable or what their background is." Also in the 1992 Response, Tucker claims he "has certainly learned his lesson from this episode, and has demonstrated a renewed concentration upon and appreciation of ethical considerations and is very cognizant of any possible ethical transgressions in cases which have transpired in Texas to which he can testify as to how he has handled those particular instances." In his 1994 Petition for Reinstatement, Tucker "freely acknowledges the error and wrong he committed in March of 1986 and thereafter in connection with this incident."
Miss. Code Ann. § 73-3-337 (Supp. 1994) provides that this Court may reinstate the disbarred attorney if "the ends of justice will be served." Ignoring momentarily that Tucker has to date failed to fully comply with this Court's order regarding submission of affidavits and may yet owe restitution to the Copeland, Cook, Taylor and Bush firm, whether the ends of justice will be served by his reinstatement is questionable. Admittedly, Tucker's legal career in Texas appears to be blemish free. Tucker asserts in his Response to the Texas show cause order that his actions which resulted in disbarment in Mississippi would not warrant disbarment in Texas. Tucker has now married a Texan and evidently has a thriving practice in Texas. He has made no mention of a desire to return to Mississippi to practice law.
The legal profession has come a long way from the days when attorneys were automatically presumed honorable. The quality and reputation of the Mississippi Bar and the public interest which it serves warrant stringent standards for reinstatement following disbarment. This Court remains firm in its resolve that one who has acted in a manner sufficiently egregious to warrant disbarment must clearly show a rehabilitation of character before reinstatement to the privilege of practicing law. Compromise of the standards to which attorneys are held will surely cripple the profession, with concomitant harm to the public.

V. CONCLUSION
After a thorough review of the evidence presented in support of Tucker's reinstatement, particularly the statements contained in his Response to the Texas show cause order, this Court remains unconvinced that Tucker has rehabilitated his character. Accordingly, Tucker's Petition for Reinstatement is denied.
PETITION FOR REINSTATEMENT IS DENIED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] However, this Court reinstated Baker, who had not made full amends and restitution, on the condition that he first comply with the full amends and restitution requirement of Rule 12.7.
[2] However, the settlement reached between the firm of Copeland, Cook, Taylor and Bush and Tollison and Clinard was presumably paid by the Copeland firm. Nothing in the record before this Court tends to show that Tucker has made any attempt to make restitution to the firm for this amount.
[3] Tucker's Response to the Texas show cause order suggests otherwise.