618 So.2d 1283 (1993)
In re the Matter of the REINSTATEMENT OF Walter L. NIXON, Jr.
No. 92-BR-1264.
Supreme Court of Mississippi.
May 20, 1993.
*1284 J. Boyce Holleman, Michael B. Holleman, Boyce Holleman, P.A., Gulfport, David C. Frazier, Gordon Frazier & Roberts, Pascagoula, for petitioner.
Michael B. Martz, Jackson, for respondents.
En Banc.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
Through this petition, former United States District Court Judge, Walter L. Nixon Jr., seeks reinstatement of his license to practice law in Mississippi. For reasons enunicated below, this Court grants the petition.

A. Facts[1]

1.
Walter L. Nixon Jr. graduated from Tulane Law School with honors in 1951 at the age of 23. Immediately thereafter, Nixon became a member of both the Louisiana and Mississippi Bars; he then joined the Air Force as a Judge Advocate. In 1955, he settled down in his hometown of Biloxi and practiced law for the next 16 years. During those years, he served as President of what is now known as the Mississippi Trial Lawyers' Association and as President of the Biloxi Chamber of Commerce.
In 1968, Nixon gave up his private practice to accept a position on the United States District Court for the Southern District of Mississippi.[2]

2.
Nixon remained on the bench until his removal in 1986, which can be traced to a case he tried in 1980. This case  United States v. 717.42 Acres of Land  involved a taking by the federal government of a large portion of Petit Bois Island which lies off the Mississippi Gulf Coast. Nixon's participation and decision in this case prompted a special investigation by the Justice Department. Ultimately, federal prosecutors charged Nixon with three counts of perjury before a grand jury and one count of "accepting an illegal gratuity." In the United States District Court in the Southern District of Mississippi, a jury found Nixon innocent of the latter count and innocent of one of the perjury counts. For the two perjury counts of which the jury found him guilty, Nixon received two concurrent terms of five years' imprisonment. See United States v. Nixon, 816 F.2d 1022 (5th Cir.1987) (detailing the facts which culminated in Nixon's conviction).
In his criminal justice textbook  Crime and Justice in America: A Human Perspective  Professor James B. Halsted, who closely followed the Nixon case, published a critical commentary on the jury's verdict:
There is an extreme paradox in Nixon's conviction. Walter Nixon, a Democrat appointed by Lyndon Johnson, was convicted of lying to a grand jury about activities that the same jury determined were totally legal and aboveboard. What the trial verdict seems to be saying is, in essence, that though he was innocent of the corrupt activities between 1979 and 1983 for which the grand jury *1285 investigated him, he is still guilty of lying to a federal grand jury to cover up his innocence! Where were the checks and balances on the federal grand jury system and his due process rights to prevent this obvious injustice?
Id. at 298.
Throughout his ordeal, Nixon has maintained his innocence of the charge that he lied to the grand jury. Thus, upon conviction, he appealed to the Fifth Circuit Court of Appeals.[3]Nixon, 816 F.2d at 1022.
Meanwhile, in 1986, the Mississippi Bar (hereinafter "Bar") filed a complaint seeking to revoke or at least suspend Nixon's license. This Court responded by suspending Nixon's license indefinitely.[4]See Mississippi State Bar v. Nixon, 494 So.2d 1388 (Miss. 1986). Three years later, Nixon's appeal to the United States Supreme Court failed, and he began serving his sentence. Nixon v. United States, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).
The Bar subsequently filed a motion with this Court to have Nixon disbarred. This Court granted the motion on November 22, 1989.[5]See Mississippi State Bar v. Nixon, 562 So.2d 1288 (Miss. 1990).
In November 1989, the Senate impeached Nixon. Shortly thereafter, the United States Parole Commission paroled Nixon after his serving nearly two years.[6]

3.
On December 11, 1992  nearly seven years after this Court suspended his license and over three years after this Court revoked it  Nixon filed a petition for reinstatement. A list of Mississippians who wrote letters on Nixon's behalf is supportive of the petition:

Former Mississippi Supreme Court Justices:
 Retired Chief Justice Harry Walker
 Retired Justice Joseph S. Zuccaro
 Retired Justice Francis Bowling

5th Circuit Court of Appeals:
 Retired Chief Judge Charles Clark

Past Presidents of Mississippi State Bar Association:
 Frank Crosthwait
*1286
 Curtis Coker
 Joseph R. Meadows
 Leonard "Lynn" A. Blackwell II
 Joe H. Daniel
 Jesse Boyce Holleman

Other Members of the Mississippi State Bar Association:
 Alvin M. Binder
 Thomas D. Bourdeaux
 Raymond L. Brown
 Mark Carlson
 Martha G. Carson
 David Clark
 Joe R. Colingo
 James Compton
 John G. Corlew
 Arvis V. Cumbest
 A. Scott Cumbest
 Danny E. Cupit
 William Denton
 James O. Dukes
 Brad Dye
 Barney E. Eaton III
 Paul Franke
 William Rainey
 Ben F. Galloway
 Charles R. Galloway
 Virgil G. Gillespie
 William F. Goodman Jr.
 Buddy Gunn
 James B. Halsted J.D./Ph.D.
 Fred M. Harrell Jr.
 Clare S. Hornsby
 John L. Hunter
 Catherine Jacobs
 Charles C. Jacobs Jr.
 Ransom P. Jones III
 John Lee
 William Liston
 Floyd J. Logan
 William E. Logan Jr.
 Robert H. McFarland
 John C. McLaurin
 Paul S. Minor
 Robert S. Murphree
 Albert Necaise
 Bobby G. O'Barr
 Joe Sam Owen
 Walter J. Phillips
 Crymes Pittman
 Mark W. Prewitt
 William W. Ramsey
 Sanford R. Steckler
 Arlo Temple
 Champ Terney
 Bob Tyler
 John Mark Weathers
 Gene A. Wilkinson
 Joseph P. Wise

Past and Present Law Enforcement Officers:
 Benjamin F. Graves, Retired Senior Resident F.B.I.
 Agent
 George Saxon, Retired Chief of the Mississippi
 Highway Patrol and Director of Public Safety
 D.D. Cvitanovich, Retired Chief of Mississippi
 Highway Patrol and Present Chief of Biloxi Police
 Dep't
 D.B. "Pete" Pope, Sheriff of Jackson County
 Rev. Bruce Little, Retired Resident Agent, F.B.I.

Clergy:
 Rev. Joseph Lawton Howze, Bishop of the Diocese of
 Biloxi, MS
 Rev. Bernard Farrell, Pastor, St. Alphonsus Catholic
 Church, Ocean Springs, MS
 Rev. Henderson Rasberry, Pastor, First United
 Methodist Church, Clinton, MS
 Rev. Patrick J. Mockler, Nativity Catholic Cathedral,
 Biloxi, MS

Other Community Leaders:
 Richard Matheny, Vice President, Merchants Bank,
 Gulfport, MS
 D'Auby H. Schiel, Chairperson of the Board and C.E.O.
 The Jefferson Bank, Biloxi, MS
 Gerald J. Quave Sr., Vice President, Hancock Bank,
 Ocean Springs, MS
 Ellis Branch, Realtor, Ocean Springs, MS
 Rebecca Lomax, Ph.D.
 Emanuel Crystal

*1287 Past and Present Public Officials:

 Gov. William Winter
 Gov. William Waller Sr.
 Gov. Bill Allain
 Senator Tommy Gollott
 Gayle Parker, Circuit Clerk/County Clerk, Gulfport,
 MS
 Jim Wetzel, Harrison County Tax Assessor
 Bobby Eleuterius, President, Board of Supervisors,
 Harrison County, MS
 Arny Rhoden, Former U.S. Marshal
The Bar, however, opposes reinstatement for reasons which will be noted in the next Section.

II. ANALYSIS

A. Applicable Rules
The Rules of Discipline for the State Bar control reinstatement of an attorney's license. Specifically, Rule 12 provides that "[n]o person suspended or disbarred shall be reinstated to the privilege of practicing law except upon petition to the Court."
This Court expounded upon the dictates of Rule 12 in Burgin v. Mississippi State Bar, 453 So.2d 689 (Miss. 1984). Pursuant to Burgin, a petitioner must show that: (1) he has made "full amends and restitution to those" who incurred a pecuniary loss due to his misconduct; (2) he has the requisite legal learning (e.g., that he has kept himself abreast of post-disbarment legal developments); and (3) he has rehabilitated himself since disbarment and has the requisite moral character. Id. at 691 (citing Ex Parte Marshall, 165 Miss. 523, 147 So. 791 (1933)).[7]
Of utmost import, "[t]he fundamental question to be addressed before reinstatement is the attorney's rehabilitation in conduct and character since disbarment." Burgin, 453 So.2d at 691 (citing Mississippi State Bar Association v. Wade, 250 Miss. 625, 167 So.2d 648 (1964)).

B. The Bar's Position
The Bar concedes that the first requirement  making "full amends and restitution"  is inapplicable to this case since no one incurred a pecuniary loss as a result of Nixon's commission of perjury.
The Bar also concedes that Nixon has satisfactorily shown that he will have the requisite legal learning: "[I]f Mr. Nixon is allowed to take and passes the Bar exam, which according to a recent ... change in Rule 12 of the Rules of Discipline requires him to take, he will have shown that he possesses the requisite legal learning to be reinstated to the practice of law."[8]
*1288 But the Bar opposes Nixon's petition for reinstatement on the ground that he allegedly does not possess the requisite moral character. Basically, the Bar explains that: (1) Nixon "was convicted of committing perjury," and (2) "His moral character when he committed those crimes was determined to be not good."

C. Nixon's Position
In his petition, Nixon delineated reasons which he feels justify reinstatement of his license. Contrary to the Bar's position, he feels he possesses the requisite moral character to have his license reinstated.
First, however, Nixon contends that he has been sufficiently punished. He served two years in a federal penitentiary and halfway house. He has experienced financial ruin.[9] He lost his job, his income,[10] his pension,[11] his home,[12] various forms of insurance,[13] and his ability to practice in the only profession he knows. He has suffered monumental embarrassment  locally and nationally. And the emotional stress and strain which this ordeal has caused his family[14] would best be described as indescribable.
In spite of all the foregoing and more, Nixon persevered and learned to adjust to his challenging new life.
Throughout this long ordeal he sought closeness with his family and friends and communion with his church; rather than look at the negatives and indulge in selfpity, he has responded positively, building character in the process.
In order to build moral strength, [Nixon] has embraced these pillars of support and the resulting rehabilitation allows him to stand before this Court and, without hesitation, but with humility and contrition, request the privilege of resuming the practice of law.
See "Petition of Walter L. Nixon Jr. for Reinstatement of His License to Practice Law" at 12-13.
In addition to participating in his church's activities, Nixon has kept himself busy with involvement on a regular basis in numerous other charitable and civic activities. The Bar recited a few examples: "His work [has] consisted of ... visiting facilities for adult derelicts and wayward children as well as visiting a charity hospital ... to assist staff members concerning AIDS problems, especially as it was affecting new born babies." Moreover, Nixon has been an active member of the St. Vincent De Paul Society, an organization devoted to assisting the poor and needy. He has taken "an active role in helping the poor in various ways, including the selling of Christmas decorations at shopping malls and visiting the sick in hospitals on weekends and rendering aid and comfort to them."
With the exception of the turkey-hunting incident, Nixon's criminal record has remained unblemished. He "has never been the subject of any complaint at any time as an attorney during his sixteen years of practice or as a judge for many years thereafter, except for the instant subject matter." And while imprisoned, he experienced no conflict with staff or fellow inmates.
Since his release from prison, Nixon has encountered seemingly insurmountable difficulty securing employment. In 1990, Nixon finally secured employment doing legal *1289 research and administrative work for a Louisiana attorney, William E. Logan Jr.[15] Logan pays Nixon about $2,500 a month. Logan recently informed Nixon that a recent decline in business means he will no longer be able to afford his services. In sum, Nixon's position is that he has met all requirements of licensure reinstatement.

III. CONCLUSION
This Court has carefully examined the "Petition of Walter L. Nixon Jr. for Reinstatement of His License to Practice Law," the Bar's "Answer to Petition of Walter L. Nixon Jr. for Reinstatement," Nixon's "Reply" to the Bar's Answer, miscellaneous documentary evidence, relevant rules, and case law. This examination has led to the conclusion that Nixon has met his burden of "proving that he has rehabilitated himself and re-established the requisite moral character sufficient to entitle him to reinstatement." Burgin, 453 So.2d at 691 (citing Ex parte Marshall, 165 Miss. 523, 147 So. 791 (1933)). The Bar did not diminish the quantum or quality of Nixon's proof by making the following assertion in support of its position that Nixon does not have the requisite character for licensure reinstatement: (1) Nixon "was convicted of committing perjury," and (2) "[h]is moral character when he committed those crimes was determined to be not good." As noted in Section II(A) of this opinion, "[t]he fundamental question to be addressed before reinstatement is the attorney's rehabilitation in conduct and character since disbarment." Burgin, 453 So.2d at 691 (citing Mississippi State Bar Association v. Wade, 250 Miss. 625, 167 So.2d 648 (1964)) (emphasis added). Thus, the Bar focused on Nixon's character at the time the offense was committed (which would be a relevant consideration were this Court considering for the first time the issue of disbarment); rather, the Bar should have focused on on his character since the time when the offense was committed. See, e.g., Haimes v. Mississippi State Bar, 551 So.2d 910, 912 (Miss. 1990) ("One thing is clear and that is that the conduct upon which the original suspension proceedings were had may not furnish grounds for denial of reinstatement.").
This Court's decision to grant the petition for licensure reinstatement is contingent on Nixon's passage of the Mississippi Bar Exam and the Multi-State Professional Responsibility Exam. See Rules of Discipline for the Miss. State Bar 12.5.
PETITION TO REINSTATE WALTER NIXON TO PRACTICE LAW GRANTED CONTINGENT ON HIS PASSAGE OF MISSISSIPPI BAR EXAM AND MULTISTATE PROFESSIONAL RESPONSIBILITY EXAM.
HAWKINS, C.J., LEE, P.J., and PITTMAN, BANKS, McRAE, ROBERTS, and SMITH, JJ., concur.
HAWKINS, C.J., specially concurs with separate written opinion joined by PITTMAN, McRAE and SMITH, JJ.
SULLIVAN, J., not participating.
HAWKINS, Chief Justice, specially concurring:
I would not attempt to add to the well-expressed opinion of Justice Prather with which I am in full agreement, but I feel constrained to express the special views I have of this unusual case.
My personal acquaintance with the petitioner is quite casual, and what I write comes from the record and the general knowledge about him by members of our profession.
Petitioner was for a number of years a talented, able and highly successful trial attorney, respected and admired by the bench and bar. This was followed by more years of dedicated service as a United States district court judge, again respected and admired by the attorneys who practiced before him and his judicial colleagues. Until this single episode which culminated in disaster to petitioner and his family, in *1290 all his years of distinguished service as a lawyer and a judge, not one blemish appears on his record. Should the literally thousands of days of his service count for nothing, and this one calamitous day count for all?
Petitioner is now 64 years of age. I wish him well, but nature will be far kinder to him than his recent fate if he has many more years of productivity left to him. Petitioner has much to offer in skill, learning and wisdom. In the time he has left, let these qualities be put to use in service to his profession and fellowman, and in repairs to his family. And, when his career does end, let him have had the opportunity to conclude it with a good name.
In passing upon a petition as this, this Court should have no boundaries but the human character in all of its attributes.
This petitioner has been whipped enough.
PITTMAN, McRAE and SMITH, JJ., join this opinion.
NOTES
[1] The textual recitation of facts derives primarily from the following documents: (1) "Petition of Walter L. Nixon Jr. for Reinstatement of His License to Practice Law"; and (2) the Mississippi Bar's "Answer to Petition of Walter L. Nixon Jr. for Reinstatement."
[2] In 1982, Nixon became Chief Judge for the Southern District.
[3] The Mississippi Bar queries whether Nixon should "be faulted for exercising his rights to appeal ... afforded him in both our State and Federal Constitutions as well as the Rules of Discipline." See "Answer to Petition of Walter L. Nixon Jr. for Reinstatement" at 16. This Court answers this query with a resounding "no."
[4] Interestingly, in a somewhat analogous case, the Nevada Supreme Court refused to disbar or sanction United States District Judge Harry Claiborne who had been found guilty of a felony and subsequently impeached by the Senate:

[I]n the instant case, "we believe the principles of fairness, justice and equity, as well as a proper application of strictly legal rules" ... demand our consideration of the hardship, humiliation, personal disgrace, mental suffering and financial costs which respondent has endured as a result of the federal proceedings against him.
... .
In addition, we observe that when respondent assumed the federal bench at the age of sixty-one, he gave up a lucrative private practice and took a substantial reduction in salary. Following his impeachment and the Senate trial, he forfeited his judicial salary, plus the eventual prospect of substantial financial benefits and security respondent could have enjoyed as a federal judge in senior status. See 28 U.S.C. § 371 (1984)... . Under these circumstances, if this court were to deprive respondent of the opportunity to earn a living at the only profession to which he has dedicated his life, and at this state of his life, the resulting hardship, in light of the isolated nature of his professional derelictions, would be extreme and disproportionately severe. Such humanitarian concerns have weighed heavily in our determination.
State Bar of Nevada v. Claiborne, 104 Nev. 115, 756 P.2d 464, 535-36 (1988).
[5] Pursuant to the Mississippi Bar Rule of Discipline 12.1, a "petition for reinstatement shall not be filed until three (3) years after the date the order of disbarment became final." Thus, Nixon had to wait until November 22, 1992, before he could apply for reinstatement of his license.
[6] In 1990, U.S. Marshals arrested Nixon after he and a long-time friend, A.C. Shattles, were caught attempting to illegally "bait" turkeys. During a subsequent hearing, the parole commission found Nixon to be in violation of his parole; however, the commission also found that mitigating circumstances existed and decided to suspend Nixon's parole for four months. On March 20, 1993, Nixon's parole expired.
[7] Some might ask whether reinstatement should be denied in view of Miss.R.Evid. 601(b) which holds that a "person convicted of perjury or subornation of perjury shall not be a competent witness in any case." But see In re Kristovich, 18 Cal.3d 468, 134 Cal. Rptr. 409, 556 P.2d 771 (1976) (public official who was convicted of perjury was not permanently disbarred from practice of law). To deny reinstatement on this ground would mean adding another "hurdle" to the four existing hurdles recited in the text accompanying this footnote and enunciated in Burgin v. Mississippi State Bar, 453 So.2d 689, 691 (Miss. 1984) (citing Ex parte Marshall, 165 Miss. 523, 147 So. 791 (1933)). In other words, this Court has never required a petitioner to prove that he or she is "competent" to testify as a witness before he or she may be reinstated.

Principles of fairness dictate that an additional requirement should not be applied to the present case. Instead, the issue should be analyzed and resolved for purposes of application or non-application in prospective cases. Such analysis should consider whether Rule 601(b) is outmoded and unreasonably rigid and whether it should be relaxed. Indeed, this rule has no federal counterpart. See 81 Am.Jur.2d Witnesses § 202 (1992) ("The legislatures of many states have enacted statutes specifically providing that persons are not to be excluded as witnesses because of their conviction of crime.") (citing cases); see also id. § 165 ("Although a witness at a criminal trial admits lying at three other criminal trials ..., it does not follow that he is an incompetent witness; the credibility of the witness may be tested by cross-examination and the credibility of his testimony is to be determined by a properly instructed jury.").
[8] Nixon explained in his Petition that he has kept up with the changes in law by subscribing to the Mississippi Law Journal's service which reports on this Court's decisions. Nixon also noted that he attended a continuing legal education seminar and has worked since 1990 as a research assistant in a Louisiana law firm. While in prison, he kept in touch with the law profession by writing safety rules and regulations for the "Safety Office." And his volunteer work for Catholic Charities in New Orleans entailed legal research and writing. Finally, Nixon appended letters from approximately 75 attorneys who attest to his ability to practice law.
[9] Nixon's debt is particularly attributable to the lawyers' fees he owes.
[10] Nixon is receiving an unspecified amount of social security benefits.
[11] Nixon is now 64 years old. If Nixon were still a judge, he would have been entitled on his 65th birthday to receive a life pension of about $130,000 per annum  plus pay increases and survivors' benefits.
[12] In 1990, Nixon's financial crisis left him with no choice but to sell his family home and buy a small, less-expensive one.
[13] Nixon explained: "[I] lost insurance benefits ... [v]ery good group insurance, hospitalization, medical coverage and a very good life insurance program that the Federal Government contributed to." "[A]ll that was lost."
[14] Nixon has seven children  ranging in age from 15 to 42.
[15] Mississippi Bar Ethics Opinions 96 and 171 prohibit the hiring of a disbarred or suspended attorney to do work as an attorney, paralegal, or clerk until all requirements for reinstatement are met. Louisiana has no such prohibition.