949 So.2d 680 (2006)
In re the PETITION OF Joe Price COLEMAN for Reinstatement in the Mississippi Bar.
No. 2005-BR-02344-SCT.
Supreme Court of Mississippi.
June 15, 2006.
Alex A. Alston, Jr., David Dogan, III, Jackson, attorneys for petitioner.
Adam Kilgore, Jackson, attorney for respondent.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. Petitioner, Joe Price Coleman, seeks reinstatement in the Mississippi Bar pursuant to Rule 12 of the Mississippi Rules of Discipline. On December 12, 2002, Coleman was suspended for a period of three years from the practice of law for violating Rules 1.15 and 8.4 of the Mississippi Rules of Professional Conduct by commingling client funds in his personal bank account.

FACTS AND PROCEEDINGS
¶ 2. The pertinent facts of this case arose while Coleman was changing employment from the law firm of Daniel Coker Horton & Bell, P.A. ("Daniel Coker") to the law firm of Baker, Donelson, Bearman & Caldwell, P.C. ("Baker Donelson"). On March 24, 2000, Coleman, as administrator of the Arkansas Shared Counsel Defense Fund, signed a check in the amount of $14,904.94 payable to the Fund. He then deposited the check into his personal checking account. Coleman stated the purpose of the draft was to transfer the proceeds of that account to the Mississippi Hearing Loss Joint Defense Fund, of which Raymond Brown was administrator. Coleman claims that while he intended to deliver the funds to Brown the following week, other responsibilities, deadlines, travel, and the process of changing firms caused him to delay completing the transfer of funds. The funds were eventually delivered to Brown approximately one month later.
¶ 3. Daniel Coker mailed a letter to Coleman regarding the money, requesting he contact the firm. Coleman called Daniel Coker and reported the money had been transferred to his personal account and then to Brown. Daniel Coker then informed Coleman it felt a responsibility to report the matter to the Mississippi Bar. Coleman expressed his desire to act jointly *681 with Daniel Coker in reporting the matter to the Bar.
¶ 4. Subsequently, the Bar brought a complaint against Coleman alleging violation of Rules 1.15 and 8.4(a), (c), and (d) of the Rules of Professional Conduct. The Complaint Committee found Coleman had violated Rule 1.15, but not Rules 8.4(a), (c), and (d), and it ordered Coleman be suspended from the practice of law for thirty days and receive a public reprimand.
¶ 5. While the Complaint Tribunal found "there was no clear showing" that Coleman's actions demonstrated an intent to misappropriate or convert the funds for his own use, this Court did not agree. We concluded in The Mississippi Bar v. Joe Price Coleman, 849 So.2d 867, 877 (Miss. 2002), that Coleman violated not only Rule 1.15 but also Rules 8.4(a), (c), and (d), and we ordered Coleman be suspended from the practice of law for three years.
¶ 6. The three-year suspension has now expired, and Coleman seeks reinstatement in the Mississippi Bar. Coleman filed a Petition for Reinstatement on December 21, 2005, and the Bar responded to the petition on February 3, 2005, by stating that Coleman's petition presents the necessary factual evidence to clearly and convincingly demonstrate rehabilitation. The Bar also supports Coleman's reinstatement to the practice of law.

DISCUSSION AND ANALYSIS
¶ 7. This Court in In re Benson, 890 So.2d 888, 890 (Miss.2004), stated the requirements under Rule 12 of the Mississippi Rules of Discipline for reinstatement after suspension. In accordance with that decision, the petitioner must (1) state the cause for suspension; (2) give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution; (4) show the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the practice of law. Id.
Cause for suspension
¶ 8. To fulfill the first requirement, Coleman must state the cause for suspension. Coleman states the cause for his suspension was the placing of trust funds in his own personal account and leaving such funds in his personal account for over a month in violation of Rules 1.15 and 8.4(a), (c), and (d) of the Rules of Professional Conduct, as discussed in this Court's opinion in Coleman, 849 So.2d at 869-70. We find Coleman has adequately set forth the facts to satisfy the first requirement for reinstatement.
Parties suffering pecuniary loss due to the improper conduct
¶ 9. To fulfill the second requirement, Coleman must give the names and addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to his misconduct. In his petition, Coleman states that no persons, parties, firms, or legal entities suffered any pecuniary loss as a result of his misconduct. Additionally, Coleman states the Mississippi Bar has been reimbursed for its costs. We find Coleman has satisfied the second condition.
Full amends and restitution
¶ 10. To fulfill the third requirement, Coleman must make full amends and restitution. Coleman asserts there are no amends to be made as a result of his misconduct, and the Bar agrees with this assertion. Accordingly, Coleman has satisfied the third requirement.
Showing of the necessary moral character for the practice of law
¶ 11. To fulfill the fourth requirement, Coleman must demonstrate he has the *682 necessary moral character for the practice of law. Coleman's petition addresses his civic and charitable involvement prior to his suspension, including service on the board of the Eudora Welty Library, service as a mentor for the Jackson Public Schools, and service to his local church. During his suspension, Coleman donated time and money to the Salvation Army and to "Christmas Angels," a Christmas fund for children on the Mississippi Coast. Also during his suspension, Coleman served as president of the homeowners association in Seaside, Florida, where he volunteered with the recent hurricane relief efforts. Coleman is an active member in both his church in Florida and Christ United Methodist Church in Jackson.
¶ 12. Coleman's petition includes thirty-six letters of recommendation from members of the Mississippi Bar, out-of-state attorneys, and several non-attorneys. These letters praise Coleman's civic and charitable work. The letters consistently refer to Coleman's sincere remorse regarding his actions that led to his suspension. The recommendations also speak highly of Coleman's character, integrity, and moral fitness to practice law. It is evident from the content of the numerous letters of recommendation that Coleman is regarded as a skilled, competent, and respected lawyer, despite his recent disciplinary suspension.
¶ 13. Furthermore, Coleman states in his petition that during the last three years he has had the opportunity to evaluate why he wanted to become a lawyer. He says the time away from the pressures of managing a law practice enabled him to remember the sacred relationship of trust between attorney and client. He recognizes that he failed to follow the rules of professional responsibility and was appropriately punished for such failure. He accepts full responsibility and is deeply remorseful for his actions and the embarrassment he caused. Coleman prays to have the opportunity and privilege to be a member of the Bar again.
¶ 14. The Bar asserts Coleman has adequately demonstrated that he possesses the requisite moral character for the practice of law. We agree and find Coleman has satisfied the fourth requirement for reinstatement.
Requisite legal education
¶ 15. To fulfill the fifth requirement, Coleman must demonstrate the requisite legal education to be reinstated to the privilege of practicing law. Coleman's petition includes a summary of his legal practice since law school through his recent three-year suspension.
¶ 16. Coleman graduated with honors from the University of Mississippi School of Law in 1975. After law school, Coleman practiced general law with a small firm for seven years in Corinth, Mississippi. In 1983, Coleman moved to Jackson and joined the Daniel Coker law firm, where he worked for the next 17 years developing the firm's environmental mass tort litigation division. During his time in Corinth and then with Daniel Coker, Coleman was an "AV" rated lawyer and was never accused of an ethical violation. Also, during the mid-1980's, Coleman served on the Bar committee that facilitated the transfer from the Code of Professional Responsibility to the Rules of Professional Conduct.
¶ 17. In 2000, Bill Reed, managing partner of the Baker Donelson law firm, approached Coleman about leaving Daniel Coker to join Baker Donelson as a partner. Coleman left Daniel Coker and entered the Baker Donelson firm as a partner, where he served until his suspension on December 12, 2002.
*683 ¶ 18. Upon his suspension from the practice of law, Coleman states he dedicated himself to reestablishing his legal career and reputation. Coleman assisted an attorney from California who worked with under-privileged consumers on commercial matters. Coleman also worked as a paralegal for attorneys in New York, California, Arkansas, Florida, and Mississippi. Coleman states his work included "document organization," whereby he would obtain loan information and organize the documents for review by the attorney. He also provided summaries of documents for use during hearings and trials. Throughout his suspension, Coleman asserts he was sensitive to the requirement that he not engage in the practice of law or have contact with his former clients. Coleman also maintains he never held himself out to be a lawyer and did not render any legal advice during the time of his suspension.
¶ 19. Additionally, Coleman testified he routinely read the decisions handed down by this Court and the Court of Appeals during his suspension. Coleman states he attended a continuing legal education seminar in Atlanta regarding Silica mass tort litigation. Coleman also took and passed the Multi-State Professional Responsibility portion of the Bar Exam and achieved a scaled score of 142, which exceeds the minimum required score of 80.
¶ 20. The Bar believes that Coleman did not engage in the unauthorized practice of law during his suspension and that Coleman possesses the requisite legal learning for the practice of law. We agree and find Coleman has satisfied the fifth requirement for reinstatement.

CONCLUSION
¶ 21. Coleman bears the burden of proving to this Court, by clear and convincing evidence, that he is rehabilitated and possesses the requisite moral character for reinstatement to the practice of law. Coleman's petition and testimony indicate his genuine remorse for his misconduct as well as his sincere desire to return to the practice of law. The letters of recommendation acknowledge the severity of Coleman's misconduct, address Coleman's rehabilitation efforts, and advocate for Coleman's reinstatement. Further, it is the Bar's position that Coleman's petition presents the necessary clear and convincing factual evidence to demonstrate rehabilitation. We agree and hereby grant Coleman's Petition for Reinstatement in the Mississippi Bar.
¶ 22. JOE PRICE COLEMAN'S PETITION FOR REINSTATEMENT IN THE MISSISSIPPI BAR IS GRANTED.
SMITH, C.J., COBB, P.J., CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. EASLEY, J. DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J., NOT PARTICIPATING.