WALLER, Chief Justice,
Dissenting:
¶ 17. I disagree that Shah has met the requirements to warrant reinstatement. Aside from his own testimony, the only evidence offered to show Shah’s general reputation is a “Petition in Support of Petitioner’s Petition to be Readmitted to the Mississippi State Bar” signed by fifty-three individuals, only two of whom Shah knew personally. Furthermore, Shah has yet to accept full responsibility for his actions. Throughout the Bar’s deposition, Shah continued to dispute material facts surrounding the prior incidences of misconduct that eventually led to his disbar- *1279 xnent. For these reasons, I do not agree that Shah has met his burden of proving a rehabilitated character. Therefore, I respectfully dissent.
¶ 18. In determining character, the opinion of the public and of those intimately acquainted with the petitioner serves as the best evidence. Ex Parte Marshall, 165 Miss. 523, 147 So. 791, 796 (Miss.1933). Consequently, petitioners seeking reinstatement almost always include letters of support or recommendation from acquaintances, colleagues, employers, community and business leaders, and members of the Bar. The number of letters is often significant. E.g. In re Petition of Coleman, 949 So.2d 680, 682 (Miss.2006) (thirty-six letters of recommendation); In re McGuire, 912 So.2d 902, 905 (Miss.2005) (sixty-six letters of recommendation); In re Reinstatement of Holleman, 826 So.2d 1243, 1246 (Miss.2002) (sixty letters of recommendation); Matter of Reinstatement of Tucker, 656 So.2d 799, 802-03 (Miss.1995) (more than 100 letters in support). Though such letters are not required per se, they are helpful in assessing a petitioner’s fitness to practice law, if the letters are substantive and the sources are diverse. In re Shelton, 987 So.2d 898, 904 (Miss.2006).
¶ 19. Shah offers nothing comparable to a letter of support. He submits instead a “Petition in Support of Petitioner’s Petition to be Readmitted to the Mississippi State Bar.” This petition states that:
We the undersigned citizens of the 11th Circuit Judicial District, and the State of Mississippi wholeheartedly support Petitioner’s Petition to [b]e Readmitted to [t]he Mississippi State Bar due to his long-term efforts in making the legal profession accessable [sic] to those who could not afford it; Petitioner’s zealous advocacy; Petitioner’s dedication to the legal profession, and his clients, by signing our names to this Petition.
Fifty-three people signed the petition, none of whom were attorneys. Shah gathered these signatures back in 2007 by going door-to-door in various towns. He said that many of these individuals knew him “from the trials ... in Coahoma County and various places.” He added that he knew “a few” personally, but was unable to recall any such person until the Bar allowed him to refresh his memory by reviewing the petition. Even then, he named only two signatories whom he knew personally.
¶ 20. Shah’s “petition in support” fails to provide any meaningful, substantive information about Shah’s reputation and character. The signatories apparently had little or no knowledge about Shah apart from their brief, three-to-five minute encounter with him on the day that they signed the petition. The petition, therefore, is not helpful in determining Shah’s fitness to practice law.
¶ 21. The deficiency of having no letters of support, or anything comparable, is compounded by the fact that Shah continues to dispute material facts that were established in his prior disciplinary matters. This, in my view, indicates that he has not yet truly come to terms with and accepted full responsibility for his prior misconduct.
¶ 22. It is true that, at several points throughout his deposition, Shah said that he accepted responsibility for his actions and even expressed remorse. But he made other comments that raise doubts about those expressions. For example, Shah disputed the Bar’s characterization of his disciplinary history as “extensive.” “I wouldn’t label it as extensive,” said Shah, “I think it’s indicative probably of a pattern of not paying attention to detail.... ” But more significantly, Shah continued to contest certain material facts that were established in Shah II and Shah III.
*1280 ¶ 23. With regard to Shah I, Shah insisted that he never had tried to deceive the lower court by implying in his motion for out-of-time appeal that another attorney, not Shah, had failed to timely file Vaughn’s appeal. The Complaint Tribunal, however, found that Shah had tried to deceive the lower court, and Shah did not contest that finding on appeal. Shah I, 919 So.2d at 62-63. Shah also disagreed that the $3,750 fee that he had charged Vaughn was unreasonable. Id. at 62. Shah said that the $3,750 fee compensated Shah for representing Vaughn on two separate matters: the appeal and Vaughn’s trial on an earlier, unrelated charge. But even if the $3,750 amount did represent a combined fee, as Shah suggests, the fee was still unreasonable, because the fact remains that Shah accepted full payment without performing at least some of the agreed-upon services. See id. at 62. Shah accepted payment to prosecute an appeal that he never filed; the fact that he would suggest that his fee in such instance was not unreasonable is especially troubling.
¶ 24. As for Shah III, Shah maintained that he never had informed Simmons of a court date that did not exist. This Court, however, concluded otherwise in Shah III. Shah II, 962 So.2d at 519-22.
¶ 25. Finally, Shah insisted that he always has tried to cooperate with the Bar. During his deposition, the Bar questioned Shah as to why he had filed only a brief, one-paragraph response to Simmons’s bar complaint against him, and why he had failed to attend the Bar’s investigatory hearing concerning Simmons’s bar complaint. Shah said he thought his response was “adequate enough,” given the little information he had about the case. And Shah said he chose not to attend the investigatory hearing because of a personal conflict between himself and Michael Martz, who had served as general counsel for the Bar at that time. A “personal conflict” with the Bar’s general counsel hardly justifies not attending an investigatory hearing. Moreover, Shah’s lack of cooperation with the Bar was not isolated to the Simmons matter. Shah I cited Shah’s “deliberate prevarication, lack of candor[,] and evasiveness” throughout disciplinary proceedings concerning the Vaughn matter, as well. Shah I, 919 So.2d at 66. It is clear that, contrary to his assertions, Shah has not always fully cooperated with the Bar.
¶ 26. Because Shah continues to dispute material, established facts concerning his prior misconduct, I cannot say that he has accepted full responsibility for his actions.
¶27. I applaud Shah for making full amends and restitution, exhibiting an exemplary work ethic, and obtaining a passing score on the Multistate Professional Responsibility Exam. But, for the reasons discussed above, I find his petition to be lacking. Thus, I respectfully dissent.
RANDOLPH, J„ JOINS THIS OPINION.