CHAMBERLIN, JUSTICE, FOR THE COURT:
¶ 1. Philip W. Gaines petitions this Court for reinstatement to the practice of law following his suspension. Upon review of the petition, we appointed Chancellor T. K. Moffett as a special master to conduct an evidentiary hearing to develop the record further. Concerning the matters he reviewed, Chancellor Moffett recommends that Gaines be reinstated. The Mississippi Bar also supports Gaines's reinstatement. After review, we agree. We find that Gaines has satisfied the jurisdictional requirements *487 for reinstatement, and we grant his petition.
FACTS AND PROCEDURAL HISTORY
¶ 2. Philip Gaines was admitted to the Mississippi Bar in 1986 and primarily practiced in the area of insurance-defense law. Gaines was suspended from the practice of law by a Complaint Tribunal appointed by this Court in The Mississippi Bar v. Philip W. Gaines , Cause No. 2013-B-1056, for violating Rules 1.15(a) and (b) and 8.4(a), (b), (c), and (d) of the Mississippi Rules of Professional Conduct ("MRPC"). On April 21, 2014, the Complaint Tribunal, by means of an Agreed Opinion and Judgment, imposed a three-year suspension from the practice of law upon Gaines, effective January 22, 2013.[1]
¶ 3. The Complaint Tribunal detailed the specific misconduct by Gaines in three separate matters. In the first matter, Gaines represented an insurance company in a suit for medical payments and uninsured motorist ("UM") coverage. The insurance company authorized Gaines to use $25,000 of the UM coverage toward settlement. The company placed those funds in trust with Gaines. Gaines settled the matter without using the UM funds but falsely amended the release to indicate that the $25,000 had been paid toward the settlement. Gaines then submitted false expense statements on the file for unrelated personal expenses to obtain the $25,000 held in trust.
¶ 4. In the second matter, Gaines represented the same insurance company, which authorized him to waive its medical payment subrogation rights in settlement of a case. Gaines secured a medical payment subrogation recovery of $6,666.67 for the company but did not advise the company of the receipt of those funds. Gaines submitted false expense statements on the file for unrelated personal expenses in order to obtain the amount held in trust.
¶ 5. In the third matter, Gaines represented a different insurance company related to its subrogation rights held by a medical provider. Gaines placed $6,500 from the insurance company into his firm's trust account. Gaines then submitted false expense statements on the file for unrelated personal expenses to obtain $5,498.14 of the amount held in trust.
¶ 6. The Complaint Tribunal, as part of the Opinion and Judgment, ordered Gaines to satisfy multiple conditions precedent prior to reinstatement. The Tribunal ordered Gaines to continue participation with the Lawyers and Judges Assistance Program ("LJAP"). Further, the Tribunal ordered Gaines to pay $34.99 for costs and expenses incurred by the Bar in the investigation of the informal Bar Complaint and $230 for costs and expenses the Bar incurred in prosecution of the Formal Complaint against him. Additionally, Gaines was directed to notify all of his clients, in writing, that he had been suspended and advise them that he would be unable to act as an attorney. Finally, Gaines was required to notify all parties opposite, as well as all courts and agencies in which he had an active case, that he had been suspended. Per the Tribunal's direction, Gaines filed a certificate of compliance with the Clerk of the Supreme Court with these provisions on May 20, 2014, within thirty days of entry of the Agreed Opinion and Judgment on April 21, 2014.
¶ 7. On January 19, 2017, Gaines filed his petition for reinstatement with this *488 Court. The Bar filed its answer, supporting Gaines's petition for reinstatement. After review of the petition and the Bar's answer, this Court appointed Chancellor T. K. Moffett as a special master to further develop the record. We directed Chancellor Moffett to conduct an evidentiary hearing on the following issues:
I. Whether Philip W. Gaines engaged in the unauthorized practice of law during his suspension by:
A. Accepting employment as an expert witness, or
B. Rendering his opinion to attorneys as to which sections of an insurance policy might apply in a matter;
II. Whether Philip W. Gaines misrepresented the fact that his former law firm does not oppose his reinstatement as is intimated in the March 8, 2017, letter from Peter C. Abide, Esq.;
III. Whether Philip W. Gaines misrepresented the nature and number of the offenses that led to his suspension to those persons from whom he solicited letters of recommendation for reinstatement.
Chancellor Moffett held a hearing on October 18, 2017 (the "October hearing"), and followed that hearing with a telephonic hearing on December 11, 2017 (the "December hearing"). Per our direction, Chancellor Moffett filed his findings of fact and conclusions of law with this Court. He recommended that Gaines be reinstated. After our de novo review of the record, we agree.
STANDARD OF REVIEW
¶ 8. This Court maintains " 'exclusive and inherent jurisdiction' over attorney reinstatement cases." In re Reinstatement of Thompson , 156 So.3d 226, 228 (Miss. 2013) (citing In re Morrison , 819 So.2d 1181, 1183 (Miss. 2001) ). We review the evidence in disciplinary matters "de novo, on a case-by-case basis." In re Reinstatement of Thompson , 156 So.3d at 228 (citing In re Morrison , 819 So.2d at 1183 ). Mississippi Rule of Discipline 12 provides that attorneys either suspended or disbarred for a period of six months or longer must petition the Court in order to be reinstated. In re Benson , 890 So.2d 888, 889-90 (Miss. 2004) ; Miss. R. Discipline 12(a).
¶ 9. To succeed in a petition for reinstatement, a petitioner must "prove 'that he has rehabilitated himself and has established the requisite moral character to entitle him to the privilege of practicing law.' " In re Reinstatement of Thompson , 156 So.3d at 228 (quoting Stewart v. The Mississippi Bar , 5 So.3d 344, 346-47 (Miss. 2008) ). Further, the petitioner must "exhibit '[a] firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed.' " Id . (quoting In re Petition of Massey , 670 So.2d 843, 845 (Miss. 1996) ).
ANALYSIS
¶ 10. When deciding whether or not to reinstate an attorney, the main issue before the Court is "the attorney's rehabilitation in conduct and character since the disbarment." In re Benson , 890 So.2d at 890 (quoting In re Holleman , 826 So.2d 1243, 1246-47 (Miss. 2002) ). A petitioner demonstrates such rehabilitation "by meeting the jurisdictional requirements of Rule 12." Id. A "petitioner carries the burden of proving that he has rehabilitated himself and established the requisite moral character to entitle him to the privilege of practicing law." Id. To demonstrate rehabilitation, the petitioner must:
(1) state the cause or causes for suspension or disbarment;
*489 (2) give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct;
(3) make full amends and restitution;
(4) show that he has the necessary moral character for the practice of law; and
(5) demonstrate the requisite legal education.
Id. Further, "[t]he Bar's position, though not a jurisdictional requirement, is a factor for consideration as well." In re Reinstatement of Thompson , 156 So.3d at 228 (citing In re Benson , 890 So.2d at 890 ). Here, the Bar supports Gaines's reinstatement and asserts that he has satisfied his burden of proof.[2]
¶ 11. As a preliminary matter, Gaines's original suspension and discipline are not before us today. In this case, the Complaint Tribunal, pursuant to Mississippi Rule of Discipline 8, suspended Gaines for three years. Neither party appealed this judgment, and the sole issue we address today is Gaines's reinstatement. See Miss. R. Discipline 9 (governing appeals).
¶ 12. We do, however, recognize that "commingling funds is the 'cardinal sin of the legal profession.' " The Mississippi Bar v. Ogletree , 226 So.3d 79, 83 (Miss. 2015) (quoting Mississippi Bar v. Coleman , 849 So.2d 867, 874 (Miss. 2002) ). Further, commingling "is indeed the ultimate breach of trust." Coleman , 849 So.2d at 874. "[C]ommingling and misappropriation damage the 'dignity and reputation of the legal profession.' " Ogletree , 226 So.3d at 84.
¶ 13. Here, from the cold record, Gaines's conduct appears egregious. He intentionally converted his clients' funds for personal use and confessed only after being confronted by his colleagues. As discussed below, though, Gaines has evidenced rehabilitation, provided restitution and satisfied the jurisdictional requirements for reinstatement.
¶ 14. Although we certainly consider Gaines's misconduct, we will not deny reinstatement on the grounds that we may have issued a harsher punishment initially. " 'One thing is clear and that is that the conduct upon which the original suspension proceedings were had may not furnish grounds for denial of reinstatement.' " Matter of Reinstatement of Nixon , 618 So.2d 1283, 1289 (Miss. 1993) (quoting Haimes v. Mississippi State Bar , 551 So.2d 910, 912 (Miss.1989) ). Also, we have recognized that "[a] suspended attorney petitioning for reinstatement has the burden of proving his case, but the case he must prove is not the same or as great as that demanded of one who has been disbarred. Haimes , 551 So.2d at 912. Further, a three-year suspension-short of disbarment-is one of the strictest sanctions imposed in our caselaw. Lastly, even in the case of disbarments, a petitioner may seek reinstatement from this Court. Miss. R. Discipline 12(a); see Matter of Baker , 649 So.2d 850, 851 (Miss. 1995) (reinstating disbarred petitioner conditionally where petitioner had embezzled client's funds from trust account).
I. Cause for Suspension
¶ 15. Gaines's petition specifies the multiple rules he violated in the MRPC. Further, Gaines provided detailed accounts of each of the three instances of conversion that constituted violations of the MRPC and led to his suspension. Gaines has provided *490 enough detail about his violations to satisfy this requirement. See In re Asher , 987 So.2d 954, 959 (Miss. 2008) (holding that a mere recitation of the rules violated is not sufficient to satisfy the jurisdictional requirement of disclosing the cause for disbarment or suspension).
II. Names of Those Who Suffered Pecuniary Loss
¶ 16. Gaines's petition provided the following names of the victims who suffered direct or indirect pecuniary loss due to his improper conduct: Todd Bevill, as Section Manager at State Farm Mutual Automobile Insurance Company; Trey Chapman, as Regional Claims Manager at Safeway Insurance Company; and Edward Currie Jr. with Currie Johnson & Myers, P.A. State Farm and Safeway were two of Gaines's clients, and Currie Johnson & Myers, P.A. was Gaines's former law firm. Gaines also provides the address of each party.
III. Amends and Restitution
¶ 17. Gaines repaid the misappropriated funds to his clients, with interest. Further, Gaines reimbursed the Bar $34.99 in expenses and $230.00 in costs incurred in this matter in compliance with Mississippi Rule of Discipline 12.
¶ 18. One of the issues addressed by Chancellor Moffett was whether or not Gaines made full restitution to his former firm in the wake of his misconduct. Exhibit 2 attached to the Bar's answer shows that Gaines did repay his firm for the amounts it paid to Gaines's clients. Chancellor Moffett at the December hearing inquired of Peter Abide, one of Gaines's former law partners, whether the law firm had made a formal claim for restitution against Gaines. Abide testified that the firm "did not pursue a formal claim." We agree with Chancellor Moffett's finding that "the evidence demonstrates that the law firm never demanded restitution for any alleged damages." We find that Gaines did provide restitution for his misconduct; he cannot now be faulted for not providing restitution where no additional claim was made for it.
IV. Requisite Moral Character
¶ 19. Gaines asserted that his misconduct in converting client funds was out of character with his long-term proven character and habits. Gaines also recognized that his past history of good character does not excuse or mitigate the egregious offenses he committed.
A. Civic, Church and Charitable Involvement
¶ 20. Since his suspension, Gaines has been involved in a number of charitable organizations including: the Billy Brumfield House, Stewpot Ministries, Habitat for Humanity and The Friends of Mississippi State Hospital. Further, Gaines has taught continuing education courses to multiple groups of professionals.
B. Letters of Recommendation
¶ 21. In Gaines's petition, he included sixty-six letters recommending his reinstatement from sixty-eight members of the Mississippi Bar, and one additional letter from his current employer. The Bar received twelve additional letters recommending Gaines's reinstatement. Each of the letters in support of Gaines's reinstatement which addressed his specific actions of client funds conversion described his actions resulting in his suspension as out of character. The letters also described Gaines's commitment to rehabilitating himself.
¶ 22. Chancellor Moffett received evidence at the October hearing concerning the process by which Gaines sought his letters of recommendation. Chancellor *491 Moffett concluded that Gaines "did not misrepresent the nature and number of offenses leading to his suspension to those who wrote letters on his behalf." Gaines provided evidence of the form email that he sent out to request letters of reference. Nothing in the form email raises any concern for this Court; further, Gaines recounted a number of times that he had detailed conversations regarding the specifics of his misconduct. While it appears that certain persons who wrote in support of Gaines's petition for reinstatement may not have been intimately aware of the extent of Gaines's misconduct, Gaines did not make any misrepresentations concerning the number of offenses that led to his suspension.
¶ 23. The Bar did receive one letter in opposition to Gaines's reinstatement from Peter Abide, Gaines's former law partner. Abide objected to implications that Gaines's former firm has no objection to his reinstatement. Chancellor Moffett, after receiving evidence at the December hearing, found that Gaines's former law firm did not articulate a position concerning Gaines's reinstatement. The record supports this conclusion. Abide testified that the matter was never discussed or voted upon by the firm.
¶ 24. Further, after review of Gaines's petition, we find-especially given the petition's simultaneous discussion of Gaines's other victims-that his petition does not misrepresent his former firm's position concerning his petition. His petition states that he had "been advised that they do not oppose his reinstatement" and that he had "been advised that they have no objection to his reinstatement." No evidence in the petition, the Bar's answer or the two evidentiary hearings disputes Gaines's representation about what he had been advised.
C. Employment Since Suspension
¶ 25. After his suspension, Gaines began working full-time with the Mississippi State Hospital in October 2013 and is currently employed there. His job duties include acting as an investigator in the Forensics Department, serving as a court liaison on certain files and conducting presentations for hospital administrators, mental-health service practitioners, and law-enforcement and court officials.
¶ 26. Further, Gaines worked as a paralegal and an expert witness for one attorney since his suspension. Gaines asserted that he was forthright to all with whom he worked of his inability to practice law and did not engage in the unauthorized practice of law.
¶ 27. "[T]he issue of a disbarred or suspended attorney's unauthorized practice of law is a matter to be inquired into in reinstatement proceedings since such activity evidences a disregard of and contempt for the order of disbarment or suspension." In re Reinstatement of Parsons , 890 So.2d 40, 43 (Miss. 2003). We have reinstated a number of attorneys who worked as paralegals during their suspensions or disbarments. See In re Petition of Coleman , 949 So.2d 680, 683 (Miss. 2006) (citing petitioner's position as a paralegal in the context of "reestablishing his legal career and reputation"); In re Reinstatement of Holleman , 826 So.2d 1243, 1247 (Miss. 2002) ; Matter of Reinstatement of Nixon , 618 So.2d at 1289 ; Williams v. Mississippi State Bar Ass'n , 492 So.2d 578, 578 (Miss. 1986).[3]
*492 ¶ 28. Some of Gaines's testimony in his deposition taken by the Bar implied that a law firm had hired Gaines for his legal opinion and advice on what portions of an insurance policy applied in a particular matter. Gaines testified that he worked as an insurance expert for a firm and "went through some things with the policy with them to figure out which sections of the policy might apply or not." In the evidentiary hearings, Gaines testified that he merely reviewed files for the different attorneys and recommended to his supervising attorneys which types of coverage would apply to certain damages. He also looked for claims that had been double-paid. After review of the additional evidentiary hearings in this matter, we find that Gaines did not engage in the unauthorized practice of law during his work as a paralegal.
¶ 29. Also, Tim Moore, an attorney who designated Gaines as an expert witness during his suspension, testified that he needed Gaines to testify as to whether a certain practice by an insurance company deviated from the industry standard. Moore expected Gaines to rely on his knowledge of the insurance industry both from his experience as an attorney and from his experience with insurance claims and underwriting policies. Also, evidence was entered into the record that Gaines had extensive background knowledge of the insurance industry outside his time as a practicing attorney. Further, the record is clear that Gaines never did actually testify in any proceeding.
¶ 30. Gaines also testified on his own behalf and represented that during his suspension he had never made an appearance as a lawyer or taken a deposition. He also stated that he had never taken work as a paralegal without informing the supervising lawyer that he was suspended and could not practice law on the firm's behalf.
¶ 31. Here, we find that Gaines did not engage in the unauthorized practice of law. As the development of our caselaw has evidenced, employment as a paralegal during suspension is commendable, as it serves to keep the petitioner up to date on the law. Petitioners, however, must be vigilant-as Gaines was-to never engage in the unauthorized practice of law or represent that they can. Gaines never entered an appearance as an attorney, never took a deposition, never interacted with a client, and never prepared documents that were filed with a court. In fact, Gaines consciously ensured that all those who interacted with him-from supervising lawyers and employers to court officials-knew that he had been suspended by this Court. As such, he did not engage in the unauthorized practice of law.
D. Mental and Emotional Status/Personal Capacity
¶ 32. The Complaint Tribunal ordered Gaines to participate in LJAP. Gaines complied with this order and signed a two-year monitoring contract with LJAP. Additionally, Gaines testified that he is a regular participant in a lawyer support group and also has attended a weekend retreat for members of the program. Gaines also expresses interest in participating with LJAP in the future to assist other lawyers who share similar experiences to his own. Further, Gaines testified that he is in good health and exercises regularly.
*493 V. Requisite Legal Learning
¶ 33. Without the directive of the Complaint Tribunal, Gaines took the Multi-State Professional Responsibility Exam (MPRE) with a passing score of 111 out of a possible 150. Further, Gaines participated as a student in numerous legal education seminars and programs with an emphasis on ethics, alternative dispute resolution, professional and personal development and law-practice management. Gaines also reviewed weekly decisions handed down by the Mississippi Supreme Court and Court of Appeals, as well as the United States Supreme Court and the United States Fifth Circuit Court of Appeals. Also, as mentioned above, Gaines served as a paralegal for several attorneys during this period. We recently have found that actions similar to Gaines's conduct after suspension merited reinstatement. Derivaux v. The Mississippi Bar , 226 So.3d 97, 101 (Miss. 2016) (reinstating where petitioner passed MPRE with a score of 92, participated in CLE seminars and regularly reviewed the Mississippi Supreme court hand-down list); see also In re Petition of Coleman , 949 So.2d at 683 (citing petitioner's employment as a paralegal).
CONCLUSION
¶ 34. Philip W. Gaines has satisfied the jurisdictional requirements under Mississippi Rule of Discipline 12. Gaines provided sufficient proof of his rehabilitation and has shown a firm resolve to live a correct life so as to convince a reasonable mind that he has reformed. Therefore, Gaines's petition for reinstatement to the practice of law in the State of Mississippi is hereby granted.
¶ 35. PETITION OF PHILIP W. GAINES FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED.
WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

Gaines represented to the Complaint Tribunal that he had not practiced law since January 22, 2013, and, as a result, the Tribunal suspended Gaines for three years effective January 22, 2013.

We also note that the Bar's position remains unchanged after both the October and December hearings.

A number of these opinions either distinguish or decline to apply Mississippi Bar Ethics Opinion No. 96. We need not do so, though, as the Mississippi Bar withdrew Ethics Opinion No. 96 on April 6, 2013. Mississippi Bar Ethics Opinion No. 171 -applying only to disbarred attorneys-also was withdrawn on the same date. See also In re Reinstatement of Parsons , 890 So.2d at 43 (Miss. 2003) (citing Ethics Opinions No. 96 and 171 ).