826 So.2d 1243 (2002)
The Matter of the Petition for REINSTATEMENT to the Practice of Law OF Michael B. HOLLEMAN.
No. 2001-BR-01834-SCT.
Supreme Court of Mississippi.
June 20, 2002.
*1244 Boyce Holleman, Tim C. Holleman, Gulfport, attorneys for appellant.
Michael B. Martz, attorneys for appellee.
EN BANC.
EASLEY, J., for the court.
¶ 1. On November 12, 1998, this Court entered an Order disbarring Michael B. "Mike" Holleman (Holleman) from membership in The Mississippi Bar (the Bar) and revoking his privilege license to practice law in the State of Mississippi. The disbarment was based upon Holleman pleading guilty to a felony which falls with the purview of Rule 6 of the Mississippi Rules of Discipline (M.R.D.). In specific, the offense was possession of child pornography which was transported in interstate commerce in violation of 18 U.S.C. § 2252A(a)(5)(B) in the United States District Court for the Southern District of Mississippi, Southern Division, Criminal Cause No. 1:97cr51PG styled United States v. Michael B. Holleman. He was sentenced to serve eighteen months in prison and served approximately fifteen and one-half months of that sentence, having received credit for good behavior. He reported to federal custody on May 15, 1998, and was released on September 9, 1999.
¶ 2. Pursuant to the provisions of M.R.D. 12, Holleman had to wait three years from the date of his disbarment before he became eligible to file a petition for reinstatement. On or about November 27, 2001, approximately thirty-six months after he was disbarred, Holleman filed the instant Petition for Reinstatement to the Practice of Law.

FACTS
¶ 3. According to the Bar, Holleman was disbarred on November 12, 1998. Holleman seeks readmission to the Bar pursuant to M.R.D. 12 to return to the practice of law in the State of Mississippi. The cause of Holleman's disbarment was his conviction of a felony, one count of violating 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, in the United States District Court from the Southern District of Mississippi, on November 24, 1997. Other than the Bar, there are no persons, parties, firms, or legal entities that suffered pecuniary loss due to the improper conduct underlying the disbarment. However, Holleman has fully reimbursed the Bar for all costs incurred by it in the disbarment proceedings.
¶ 4. Holleman graduated from the University of Mississippi Law School, cum laude, in January 1981,[1] and engaged in the full-time practice of law in state and federal courts until he took inactive status in October 1997. For most of his career, Holleman practiced law with his two brothers and father in their Gulfport, Mississippi law firm, a firm established by his father.[2] In 1987, Holleman married, and together he and his wife had a son in 1994.[3]
*1245 ¶ 5. In late 1996 or early 1997, Holleman, while drinking heavily at his office, accessed some publically available computer images of child pornography on the internet. Holleman did not print any of the computer images, and after briefly viewing some of these images, he believed that he had deleted them from his computer. Following a seizure of Holleman's computer in February 1997, federal agents recovered these images from his computer hard-drive.
¶ 6. In September 1997, Holleman entered into a Continuing Living Contract with the Mississippi Lawyers and Judges Assistance Program (MLJAP), Betty M. Daugherty (Daugherty), Executive Director.[4] On October 17, 1997, Holleman surrendered his license to practice law, placing himself on disability inactive status pursuant to M.R.D. 17 and 24. Holleman assisted in the orderly transfer and/or disposition of all of his files, under the guidance and direction of Chancellor J.N. Randall, Jr., of the 8th Chancery Court District. On October 19, 1997, Holleman entered residential treatment at COPAC in Jackson, Mississippi, a treatment plan he completed over a period of five months.[5]
¶ 7. On November 24, 1997, Holleman pled guilty to one count of violating 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, based on the computer images recovered from his hard drive. The court held a sentencing hearing on March 18, 1998. The court sentenced Holleman to eighteen months and made an alternative finding in support of the sentence that Holleman established grounds for an early release based on his extraordinary rehabilitative efforts. Based on the underlying facts and the independent, concurring evaluations of two leading experts in the field, the court, in releasing Holleman on his own recognizance, made a specific finding on the record, applying the "clear and convincing" standard required in 18 U.S.C. § 3143, that he did not pose a threat to public safety.
¶ 8. On May 19, 1998, Holleman reported to a federal correctional institution, where he remained until released on September 9, 1999. This Court entered its order of disbarment based on conviction of a felony. Holleman was released on September 9, 1999, and moved to Louisiana in December 1999, after securing employment with the law firm of LeBlanc & Waddell, LLC (Le-Blanc & Waddell), in Baton Rouge, Louisiana. Holleman remains currently employed at the same law firm as a paralegal earning $60,000.00 a year. Since his disbarment, he has also continued to study the law, on his own, in his employment and through CLE attendance. On June 12, 2002, United States District Judge Charles W. Pickering, Sr., entered an order terminating Holleman's supervised release and discharging him from further supervision.[6]
¶ 9. Furthermore, Holleman has engaged in the following programs post disbarment: (a) voluntary submission to the rigorous requirements of MLJAP, under a five-year agreement; (b) voluntary admission to and successful completion of a plan of treatment at COPAC, a renowned addictions treatment facility in Brandon, Mississippi; (c) enmeshing himself in the Alcoholics Anonymous (AA) program for living, which teaches trust in God, honest and rigorous self-evaluation, making amends for all wrongs, except where such would cause others harm, and helping others; *1246 (d) voluntary submission to the Louisiana Assistance Program; (e) volunteering, at the request of the MLJAP, to help other lawyers in trouble with addictions; (f) volunteer work in AA, helping other lawyers and non-lawyers addicted to alcohol and/or drugs, or other addictive behaviors; (g) volunteer work for Feed My Sheep in Gulfport, Mississippi prior to moving to Louisiana; (h) volunteer work for Hospice Care of Louisiana, after moving to Louisiana; (i) volunteer work for the American Cancer Society and other charitable organizations in Louisiana; and (j) regular attendance at church, prayer group meetings, and 3-7 meetings a week of AA.
¶ 10. The Bar supports Holleman's petition for reinstatement of membership in the Bar and the reissuance of his license to practice law in this State as required by M.R.D. 12, subject to the following conditions:
1. Holleman not be reinstated to the practice of law until his reporting supervised release status expires or is terminated.
2. Holleman takes and passes the complete bar examination as is required by M.R.D. 12.5.
3. Holleman comply with the provisions of M.R.D. 25 which requires the petitioner to supply supporting proof of the petitioner's personal capacity to practice law as may be necessary and submit to examinations, if any, by physicians or psychiatrists selected by this Court, if the Court deems such examinations necessary in addition to the reports submitted by Dr. Patricia J. Fargason, Ph.D., CAS (Chemical Director for COPAC) and Dr. Boyd Benefield, M.D. (Holleman's personal physician).
4. Holleman be required to continue to participate in a program, such as, the AA, the MLJAP or the Louisiana Assistance Program for such period of time as the Court deems reasonable and necessary.
¶ 11. Holleman submits sixty letters of recommendation supporting his reinstatement to the bar and the practice of law. The letters of recommendation consist of letters from Holleman's current employer, Jules B. LeBlanc, III (LeBlanc); co-worker, George M. Pierson (Pierson); as well as numerous other Mississippi and Louisiana attorneys; Dr. Ernest T. Riemann, Jr. (Dr. Riemann), head of Feed the Sheep Program; and Betty M. Daugherty, Executive Director of MLJAP. Holleman also voluntarily attended a deposition conducted by Michael B. Martz on behalf of the Bar on December 12, 2001, in connection with Holleman's Petition for Reinstatement to the Bar. The Bar submits the depositions as an exhibit to its response filed with this Court.

LEGAL ANALYSIS
¶ 12. The reinstatement of suspended or disbarred attorneys is governed by M.R.D. 12. Burgin v. Miss. State Bar, 453 So.2d 689, 690 (Miss.1984). M.R.D. 12 provides:
(a) No person disbarred or suspended for a period of six months or longer shall be reinstated to the privilege of practicing law except upon petition to the Court.
(b) Reinstatement to the practice of law following any other discipline shall be only upon proof of compliance with any such sanctions.
The burden of proving that he has rehabilitated himself and reestablished the requisite moral character sufficient to entitle him to reinstatement is upon the petitioner. Id. at 691 (citing Ex parte Marshall, 165 Miss. 523, 147 So. 791 (1933)). The fundamental question to be addressed by this Court before reinstatement is the attorney's rehabilitation in conduct and character *1247 since the disbarment. Burgin, 453 So.2d at 691 (citing Miss. State Bar Ass'n v. Wade, 250 Miss. 625, 167 So.2d 648 (1964)). Requirements for reinstatement, as provided by M.R.D. 12, and expounded upon in Burgin, are that the petitioner shall state the cause or causes for suspension or disbarment; give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; make full amends and restitution; state the reasons justifying reinstatement; and show that he has the requisite moral character and legal learning to be reinstated to the privilege of practicing law.
¶ 13. First, Holleman's petition clearly states the causes for his disbarment. Second, although it only indirectly addressed the issue of pecuniary loss, the statement that "there was no victim in the crime" is sufficient in this case. Because the criminal violation for which Holleman was convicted did not directly involve pecuniary loss to any person, party, firm or legal entity, and the United States District Court did not order restitution, this Court is not forced to address any possible indirect pecuniary loss. However, Holleman was assessed $100.00 as part of his sentence which he has paid.
¶ 14. Third, Holleman was ordered to pay and did pay the Bar's costs and expenses associated with its investigation and prosecution of the disbarment proceeding. The costs and expenses of the Bar amounted to $118.03. These costs and expenses were paid by Holleman to the Bar on December 1, 1998. Holleman has also paid $500.00 in additional investigation fees to the Bar.
¶ 15. Fourth, in support of his petition for reinstatement Holleman represents that he graduated cum laude from the University of Mississippi Law School in January 1981, and engaged in the full-time practice of law in state and federal courts until he took inactive status in October 1997. Holleman practiced primarily with his two brothers and his father in Gulfport, Mississippi. Holleman was married in 1987, but they divorced on October 17, 1997. From the marital union, one son was born in 1994. Holleman pays $600.00 per month in child support.
¶ 16. Since December 13, 1999, Holleman has been employed by the law firm of LeBlanc & Waddell as a paralegal, currently earning $60,000.00 a year. In his capacity as paralegal, Holleman researches and drafts motions, motion briefs, appellate briefs and various memorandums, as well as, evaluating and preparing claims for settlement negotiations for the firm. LeBlanc & Waddell has offices in four Louisiana cities, and it employs approximately sixteen attorneys.
¶ 17. Fifth, Holleman has continued to work in the legal field since his release from federal prison. Holleman has also continued to study the law and attend continuing legal education (CLE) courses since his release. Furthermore, in order to be reinstated, Holleman will have to take and pass the complete Mississippi Bar Exam pursuant to M.R.D. 12.5, thereby satisfying the legal learning requirement. Holleman has furnished the results of the March 2002 Multi-State Professional Responsibility Exam (MPRE) with a score of 136 compared with the passing score of 75 required in Mississippi.
¶ 18. Sixth, the Bar has conducted an investigation as to Holleman's petition for reinstatement. The Bar has received and reviewed Holleman's documents and letters of recommendation. Furthermore, Holleman was voluntarily deposed by the Bar. The Bar concluded that Holleman "appeared to be mentally and emotionally stable during the course of his deposition." Holleman represented that he is currently taking prescribed medications for depression (Notriptyline) and allergy (Zyrtec).
*1248 ¶ 19. As to his future plans, Holleman represented that he is satisfied with his employer in Louisiana, and if reinstated, he may continue to work for LeBlanc & Waddell as a licensed Mississippi attorney or in a branch office on the Mississippi Gulf Coast for that law firm. LeBlanc indicates in his letter of recommendation that Holleman is welcomed to continue his employment with their firm in his current capacity or as an attorney. However, Holleman also represents that he might one day seek to return to practice with his brothers and father in Gulfport.
¶ 20. This Court considers the Bar's position as to reinstatement as a factor in determining whether to grant reinstatement. See In re Medley, 687 So.2d 1219, 1220 (Miss.1997). This Court in In re Parsons, 797 So.2d 203, 207 (Miss. 2000) (quoting Haimes v. Miss. State Bar, 551 So.2d 910, 913 (Miss.1989)), stated:
This Court has the ultimate responsibility for the discipline of members of the Mississippi State Bar and for assuring that only those who adhere to the profession's high ethical standards are permitted the privilege of providing legal services to the public. On the other hand, we may not wholly sacrifice on the altar of bar integrity one suspended who thereafter complies with our rules regarding the conditions of suspension and the procedure for reinstatement ... If there be substantial reasons (unrelated to the conduct for which the suspension was originally imposed) why the suspended attorney should not be reinstated, it is incumbent upon the Bar to advise this Court of those facts with specifically so that this Court might determine whether a proper balancing of the relevant interest requires appointment of a master for a evidentiary hearing on the reinstatement request.
In the case before this Court, the Bar supports Holleman's conditional reinstatement.
¶ 21. Seventh, the focus of the Court must be whether Holleman has rehabilitated himself since his disbarment and now possesses the requisite moral character to practice law. See Medley, 687 So.2d at 1220; Haimes, 551 So.2d at 912. In support of his having the requisite moral character, Holleman submitted sixty letters of recommendation including seven letters from former Bar presidents;[7] a former Mississippi Supreme Court Justice;[8] public officials;[9] three letters from doctors;[10] his current employer, LeBlanc; and numerous other attorneys in Mississippi and Louisiana.[11]See Ex parte Marshall, 165 *1249 Miss. at 551, 147 So. at 796 (opinion of acquaintances is admissible as evidence of character); See also Medley, 687 So.2d at 1220.
¶ 22. Holleman served approximately fifteen and one-half months of his eighteen-month sentence at the Federal Correctional Institution (FCI) located in Yazoo City, Mississippi. While incarcerated in the FCI, Holleman regularly attended AA meetings, successfully completed a Living Free program, and was employed by the library as a janitor. Holleman earned ten cents an hour for this job, but shortly before his release, he received a raise to eleven cents an hour. After his release, Holleman spent two months living with his parents in Gulfport, before moving to Baton Rouge, Louisiana, to work for LeBlanc & Waddell.
¶ 23. Since his release, Holleman has been involved with various civic organizations including AA, the Feed My Sheep Program, Hospice Care, and the American Cancer Society. Holleman maintains his letter of membership at the First Baptist Church of Gulfport, Mississippi, but he attends church on a regular basis at the Family Worship Center, in Baton Rouge.

CONCLUSION
¶ 24. While not diminishing the seriousness of Holleman's crime, we find that since his disbarment and release, he has met his burden of proving that he has rehabilitated himself and possesses the requisite moral character to entitle him to conditional reinstatement. Furthermore, Holleman has completed the MPRE with a passing score above what is required in Mississippi, and on June 12, 2002, Holleman received an early termination of his supervised release. Michael B. Holleman is reinstated to the practice of law in the State of Mississippi contingent, as the Bar proposes, on (1) his passage of the Mississippi Bar Examination as required by M.R.D. 12.5; (2) his continued participation in a program such as AA, the MLJAP or the Louisiana Assistance Program for a mandatory period of sixty months from his reinstatement to the Bar; and (3) his furnishing the Bar with proper documentation of such compliance.
¶ 25. CONTINGENT REINSTATEMENT GRANTED.
PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR.
NOTES
[1] University of Mississippi Law School Transcript, Exhibit A, Holleman's Brief.
[2] Boyce Holleman, father; Tim Holleman, brother; Dean Holleman, brother.
[3] On October 17, 1997, Holleman and his wife ended their 10 year marriage in an amicable divorce proceeding.
[4] Mississippi Continuing Living Contract, Exhibit B, Holleman's Brief.
[5] Letter of Betty M. Daugherty, Executive Director, MLJAP, Exhibit C1, Holleman's Brief.
[6] United States v. Holleman, Criminal Cause No. 1:97cr51PG (S.D. Miss. June 12, 2002).
[7] Leonard A. Blackwell, II; Alex A. Alston, Jr.; Joseph R. Meadows; James O. Dukes (now deceased); Walter W. Eppes, Jr., Raymond L. Brown, and Grady F. Tollison, Jr.
[8] Honorable W. Joel Blass.
[9] Gail Parker, Circuit Clerk Harrison County; Jo Love, Eighth Chancery Court District Administrator.
[10] Dr. Riemann, Dr. Patricia J. Fargason, Ph. D., CAS and Dr. Boyd Benefield, M.D.
[11] Pierson, Gerald Blessey, Walter L. Nixon, Jr., Eugene W. McGehee, William R. Leary, David E. Cooley, James R. Clary, Jr., Joseph E. Stockwell, III, Mark B. Strickland, Tom Sumrall, Wynn E. Clark, Lindsey M. Ladouceur, Harry R. Allen, Walter W. Dukes, William F. Dukes, R.L. Netterville, Mack A. Bethea, Hugh D. Keating, W. Raymond Hunter, Michael B. McDermott, Paul M. Newton, Jr., Ben F. Galloway, David L. Cobb, Edward O. Miller, Ernest G. Martin, Jr., Evelyn Floyd, James F. Thompson, John F. Hester, John M. Harral, Paul S. Minor, John L. Hunter, Lee N. Perry, Michael F. Cavanaugh, Paul M. Newton, Sr., H. Rodger Wilder, Roger T. Clark, Ron M. Feder, Roy B. Strickland, Sanford R. Steckler, Stanford Young, Wayne L. Hengen, William M. Rainey, Bobby G. O'Barr, Sr., James R. Moore, Jr., Ken R. Adcock, Jerry O'Keefe, Thomas E. Vaughn, Paul T. Benton and John Grisham.