**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2023-BR-00410-SCT**

*CHRISTINA HUFFMAN BENNETT*

*v.*

*THE MISSISSIPPI BAR*

ATTORNEY FOR PETITIONER:      BENTLEY E. CONNER
ATTORNEYS FOR RESPONDENT:    ADAM B. KILGORE
                                  MELISSA S. SCOTT
NATURE OF THE CASE:            CIVIL - BAR MATTERS
DISPOSITION:                    REINSTATEMENT DENIED - 03/28/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    Before the Court is Christina Huffman Bennett's petition for reinstatement to the practice of law following her six-month suspension in February 2021.[1] After a thorough review of the record, we find Bennett has failed to meet the jurisdictional requirements for reinstatement. Accordingly, Bennett's petition for reinstatement is denied.

## FACTS & PROCEDURAL HISTORY

¶2.    Bennett seeks reinstatement to the practice of law following her six-month suspension effective February 1, 2021, for the violation of Mississippi Rules of Professional Conduct 1.4(a), 1.5, 1.15(a), 1.15(c), 8.4(a) and 8.4(d).

¶3.    Bennett filed her petition for reinstatement on April 11, 2023, and she supplemented

---

[1] Bennett's petition appears as an open motion on the Court's docket. This opinion resolves the motion.

her petition on September 7, 2023. The Mississippi Bar was ordered to investigate the allegations of Bennett's petition and to answer the petition. The Bar reviewed the petition and deposed Bennett on October 11, 2023. The Bar then filed its answer to Bennett's petition on December 13, 2023.

## STANDARD OF REVIEW

¶4. This Court has exclusive jurisdiction over attorney-reinstatement cases. *In re Morrison*, 819 So. 2d 1181, 1183 (Miss. 2001). The Court conducts a de novo review of the evidence in such cases, acting as the trier of fact on a case-by-case basis. *Id.* The petitioner "carries the burden of proving that [s]he has rehabilitated h[er]self and has established the requisite moral character to entitle h[er] to the privilege of practicing law." *Stewart v. Miss. Bar*, 5 So. 3d 344, 346-47 (Miss. 2008) (citing *In re Holleman*, 826 So. 2d 1243, 1246 (Miss. 2002)). The standard of proof in reinstatement cases is clear and convincing evidence. *Wong v. Miss. Bar*, 5 So. 3d 369, 371 (Miss. 2008).

## DISCUSSION

¶5. The fundamental issue in a reinstatement case is whether the petitioner has rehabilitated herself in conduct and character since the disbarment. *In re Benson*, 890 So. 2d 888, 890 (Miss. 2004). The petitioner demonstrates such rehabilitation "by meeting the jurisdictional requirements of Rule [13 of the Rules of Discipline for the Mississippi State Bar]." *Id.* (citing *In re Holleman*, 826 So. 2d at 1247). In *Benson*, the Court set forth five jurisdictional requirements that apply to Rule 13 reinstatement petitions. *Id.* The petitioner must:

2

(1) state the cause or causes for suspension or disbarment; (2) give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution; (4) show that he has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law.

*Id.* "Though not a jurisdictional requirement, we consider the Bar's position as to reinstatement as a factor in determining whether to grant the petition." *Id.* (citing *In re Holleman*, 826 So. 2d at 1248).

### I. Cause for Suspension

¶6. Bennett was hired by attorney William Kirksey as an associate attorney of Kirksey and Associates in December 2012. She was named a partner in the firm under a loosely formed partnership in June 2018 after Kirksey was diagnosed with cancer. Bennett explained that "there was never a formal partnership" other than changing the name of the firm with the Secretary of State's Office and changing the officers to Kirksey and her. Bennett was eventually given signatory authority on the firm's bank accounts in January 2019, a few months before Kirksey's death in May 2019.

¶7. As causes for her suspension, Bennett discusses three occasions when she (1) failed to keep a client reasonably informed, (2) failed to provide a reasonable attorney's fee, (3) failed to safekeep property, (4) violated or attempted to violate the rules of professional conduct, and/or (5) engaged in conduct prejudicial to the administration of justice. We separately address each occasion.

### A. Christopher Toney

¶8. Kirksey and Bennett were hired to represent Christopher Toney in a criminal matter

3

in which Toney was charged with various offenses including aggravated assault, robbery, and kidnapping; Toney paid a nonrefundable fee of $30,000. Bennett testified that although Toney hired Kirksey, she was hired "by proxy" due to her role in the firm and that the focus of the representation was pretrial. Bennett explained that she and Kirksey successfully got Toney released on bond. Bennett further explained that she understood that if anything were to happen to Kirksey, she would "take on the representation from that point on."

¶9. After Kirksey died, Bennett heard from Toney more frequently. Bennett admitted she did not properly communicate with Toney after Kirksey's death. She admits her failure to communicate, and she resolves not to repeat similar misconduct in the future.

¶10. Bennett asserts that there is nothing else for her to do for Toney and that the representation is complete since Toney was never indicted.

### B. Bennie R. Newell

¶11. According to Bennett, Bennie R. Newell hired Kirksey to represent him in a criminal matter for $80,000 as a "minimum non-refundable fee due upon the execution of the contract." Although Bennett asserts Newell hired Kirksey, she acknowledges that the firm was hired and that she signed the contract along with Kirksey and Newell. According to Bennett, Newell made two of the three agreed-upon payments. She confirmed during her deposition that Newell paid "right at $60,000."

¶12. Bennett testified that upon receipt, Kirksey deposited the funds into the firm's operating account, but he transferred approximately $70,000 to a joint bank account belonging to his wife and him the week prior to his death. Bennett further testified that she

4

did not obtain the passwords or obtain access to any of the firm's accounts until after Kirksey died, and she reiterated that, according to the records she saw, the funds were deposited into the firm's operating account and later spent.

¶13. After Kirksey's death, Newell terminated Bennett and hired new counsel, at which time he sought a full refund of the $60,000 fee he had paid. Newell filed suit against Bennett in Copiah County Circuit Court and was later awarded a default judgment in the amount of $67,860.[2] According to Bennett, the judgment was never paid. Bennett explained that she filed for bankruptcy "due to other personal financial matters that were going on" and that the judgment was discharged in bankruptcy.

### C. Trust Account Funds

¶14. Bennett asserts that at the time of Kirksey's death, the firm's trust account ledger was not in balance with the bank account and that the trust account indicated a balance of $96,115.70. Bennett disbursed $95,000 to Jason May, returning funds that had been held on May's behalf. Bennett testified that the amount disbursed was approximately $30,000 less than what May was owed and that May later sued Kirksey's estate for the remaining funds.

¶15. Bennett also disbursed $1,000 to Jones Contractors, a company run by her then-husband, who had previously given Kirksey funds.

¶16. Bennett believed that Kirksey had deposited personal funds into the trust account to cover monthly bank fees and that after distribution to May and Jones Contractors, any remaining amount left on deposit was the property of the firm. As a result, Bennett withdrew

---

[2] The judgment was for $60,000 plus interest.

$500 for personal use without conducting a complete accounting to determine ownership of those funds. Bennett acknowledges and admits that this was improper.

¶17. The Bar asserts that Bennett's petition and deposition testimony "sufficiently set forth the reasons for her suspension." We disagree and find that Bennett fails to sufficiently state the cause of her suspension as it relates to Newell.

¶18. Bennett fails to explain what about her relationship with Newell led to her suspension. While she asserts the facts surrounding her representation of Newell, Bennett does not address or admit any misconduct.

¶19. With Toney, Bennett acknowledged her misconduct and admitted she failed to communicate with Toney. Regarding the trust account funds, Bennett acknowledged her misconduct and admitted she withdrew funds from the firm's trust account for personal use without having conducted a complete accounting to determine ownership of those funds. But with Newell, while Bennett admits Newell was one of the matters that led to her suspension, she denies any misconduct related to the representation.

¶20. Although she admits she signed the contract to represent Newell, Bennett asserts that she "had nothing to do with [Newell's criminal] case," that Kirksey handled the case and how the funds were treated, and that Kirksey's heirs received and benefitted from the funds. Moreover, Bennett asserts Newell's fee was nonrefundable.

¶21. Neither the formal complaint filed against her by the Bar nor the agreed opinion and judgment setting forth her suspension are attached to Bennett's petition or included in the record before the Court. Additionally, the contract upon which Bennett relies in support of

6

her assertion that Newell's fee was nonrefundable is not attached to the petition or included in the record. While Bennett asserts the Bar has a copy of the contract, Bennett has the burden of proof, and she has failed to provide the Court with this information. *Stewart*, 5 So. 3d at 346-47 (citing *In re Holleman*, 826 So. 2d at 1246).

¶22. In *In re Asher*, regarding the causes for his suspension, "Asher merely list[ed] the Mississippi Rules of Professional Conduct which he was found to have violated in each case." *In re Asher*, 987 So. 2d 954, 958 (Miss. 2008). "Beyond stating the cause numbers and the rules of professional conduct that were violated, [Asher] d[id] not provide any meaningful information as to the reasons why he was suspended from the practice of law." *Id.* at 959. Because Asher "merely listed the Mississippi Rules of Professional Conduct which he violated, and plainly failed to state the cause or causes for suspension," the Court concluded "that Asher ha[d] not satisfied this requirement." *Id.*

¶23. Here, like Asher, Bennett "does not provide any meaningful information as to the reasons why [s]he was suspended from the practice of law." *Id.* Instead, Bennett denies any misconduct as it relates to Newell. In fact, in her petition, Bennett asserts "[h]er misconduct centered around her failure to maintain contact with [Toney] [and] disbursing $500.00 in funds held in Kirksey's trust account to herself without having an appropriate accounting identifying the source of those funds." She says nothing about Newell or what about that representation led to her suspension. Moreover, neither Bennett's petition nor the attachment to her petition include the Mississippi Rules of Professional Conduct she was found to have

7

violated. But for the Bar's response, the Court would not have that information.[3]

¶24. Because she fails to sufficiently set forth the causes for her suspension as it relates to Newell, Bennett has not satisfied this requirement.

> II. *Names and Addresses of Those Who Suffered Pecuniary Loss*
>
> III. *Full Amends and Restitution*

¶25. The Bar asserts Bennett "has not met the second and third requirements regarding pecuniary loss and full amends by virtue of the default judgment where she was found to owe Mr. Newell $67,860[.]" We agree that Bennett has failed to meet these requirements.

¶26. Bennett asserts no person, party, firm, or legal entity suffered any pecuniary loss as the result of her misconduct. Because she denies any pecuniary loss, Bennett fails to include the names and addresses of those who suffered pecuniary loss and fails to show that she has made full amends and restitution to the parties who suffered pecuniary loss due to her misconduct.

¶27. Regarding the default judgment entered against her in favor of Newell, Bennett asserts she does not owe Newell amends or restitution. Bennett claims that she "had nothing to do with [Newell's] case," that Newell's fee was nonrefundable, and that Newell got what he bargained for since he was able to get a trial continuance until the next court term.[4] But as previously noted, Bennett fails to include any documentation to support her assertions.

---

[3] The Bar's response simply lists the rules Bennett violated. Neither Bennett's petition nor the Bar's response explain how these rules apply to each occasion/offense.

[4] According to Bennett, Newell hired Kirksey "strictly because . . . Kirksey had cancer and could get a continuance."

¶28. Additionally, Bennett asserts that she filed for bankruptcy and that the judgment was discharged in bankruptcy. But this Court has determined that such actions do not necessarily satisfy the requirements of full amends and restitution.

¶29. In *Stanford v. Mississippi Bar*, the Court found an agreed-upon settlement between the parties for less than what was owed did not satisfy the requirement of full amends and restitution for reinstatement purposes. *Stanford v. Miss. Bar*, 308 So. 3d 429, 435 (Miss. 2019). There, Stanford sought reinstatement to the practice of law following his suspension. *Id.* at 430. In support, Stanford relied on the fact that his insurance carrier had settled a claim on his behalf and that his subsequent bankruptcy shielded him from restitution. *Id.* at 433.

¶30. The Court concluded, however, that Stanford had not made full amends and restitution. *Id.* at 435. The Court explained:

> [I]t is clear from the face of the petition that the party has not been made whole by the settlement. . . . *[T]here is an important distinction between a party's legal liability that can be cured by a settlement and a party's duty to provide full restitution as a requirement for reinstatement.* Plaintiffs and creditors often accept settlements that equal less than the actual debt, and they do so for varied reasons, e.g., to avoid litigation expenses and to avoid a full or nearly-full loss of the amount in the event of an adverse verdict or bankruptcy. The execution of a release by the injured party does not release Stanford from the full restitution duty imposed by the reinstatement process. As stated previously, it is the duty of the petitioner to satisfy each requirement, and based on the petition currently before the Court, Stanford did not satisfy the requirement.

*Id.* (emphasis added). Here, as in *Stanford*, "there is an important distinction between *a party's legal liability* that can be cured by a [bankruptcy discharge] and *a party's duty* to provide full restitution as a requirement for reinstatement." *Id.* (emphasis added).

¶31. "[I]t is the duty of the petitioner to satisfy each requirement[.]" *Id.* Based on the

9

petition before the Court at this time, Bennett has not satisfied the second and third requirements regarding pecuniary loss and full amends and restitution.

## IV. Necessary Moral Character

¶32. The fourth requirement considers whether the petitioner has the necessary moral character for the practice of law.

### A. Employment Since Disbarment

¶33. At the time of her suspension, Bennett was working as an attorney for Disability Rights of Mississippi. She continued to work as a non-attorney monitor after her suspension until September 2022.

¶34. Bennett renewed her teaching license in Mississippi, and she taught tenth grade English and eleventh grade advanced writing from October 2022 to May 2023. Bennett also received her teaching license in Florida, and she moved to Florida in May 2023. She currently resides and teaches in Stuart, Florida.

### B. Civic and Charitable Involvement

¶35. Bennett volunteered with the Center for Violence Prevention in Rankin County, and she donated $10,000 to the organization. She has further served her community through her role as a teacher. For example, she has served as a chaperone at school dances, taken tickets at football games, and filled in for other teachers when needed.

### C. Letters of Support

¶36. Bennett submitted four letters of recommendation.[5] Bennett explained during her

---

[5] The recommendation letters are from the following four attorneys: (1) Marsha Weems Stacey, (2) Travis M. Clements, (3) Meredith Brasfield, and (4) Ashley Schuerman

deposition how she knows each individual. Bennett asserts she advised each individual of the circumstances that led to her suspension.

¶37. In March 2006, the Bar adopted a policy that allows members of the Bar to express their support or opposition to any petition for reinstatement. As a result, the Bar published notice of Bennett's petition to the Mississippi Bar members and allowed for letters in support of or in opposition to Bennett's reinstatement. No additional letters were received.

### D. Mental and Emotional Status

¶38. In the attachment to her petition and during her deposition, Bennett extensively discusses the domestic abuse she endured from her former husband and the impact it had on her personally and professionally. Beginning February 2020, Bennett worked with a trauma specialist. The counseling and therapy continued until both Bennett and the therapist were satisfied that Bennett possessed the necessary coping skills for a domestic abuse survivor.

¶39. Bennett testified that she does not use illegal drugs or consume alcohol and that she is "[d]oing well physically." Bennett believes she is mentally and physically healthy to return to the practice of law.

### E. Future Plans

¶40. Bennett testified that if reinstated, she would pursue obtaining her license to practice law in Florida. If her petition is denied, Bennett testified that she will continue to teach.

¶41. The Bar asserts Bennett has "sufficiently show[n] that she has the necessary moral character for the practice of law." We agree and find Bennett has satisfied this requirement.

---

Bennett.

## V. Requisite Legal Education

¶42. In November 2021, Bennett took and passed the Multistate Professional Responsibility Exam. Bennett has also taken ethics-related continuing legal education courses since her suspension.

¶43. The Bar asserts and we agree that Bennett has demonstrated the requisite legal education to be reinstated to the practice of law.

## VI. Bar's Position

¶44. The Bar asserts Bennett "has not satisfied her burden of proof to show that she is worthy of reinstatement." It therefore "opposes her reinstatement."

## ANALYSIS AND DECISION

¶45. "Attorney-reinstatement cases are judged on a case-by-case basis in order to account for the unique circumstances of each petitioner." *Stewart v. Miss. Bar*, 365 So. 3d 964, 977 (Miss. 2023) (quoting *Stewart v. Miss. Bar*, 326 So. 3d 388, 398 (Miss. 2019)). "As officers of the Court, [lawyers] are required to behave in accordance to certain high standards." *Miss. Bar v. Lumumba*, 912 So. 2d 871, 883 (Miss. 2005). "It is a privilege to practice law, and the principle here is that [lawyers] give up many rights ordinary citizens have in order to be practicing lawyers." *Id.* "[T]he license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters." *Tucker v. Miss. Bar*, 326 So. 3d 407, 412 (Miss. 2020) (internal quotation marks omitted) (quoting *Anderson v. Miss. Bar*, 269 So. 3d 109, 113 (Miss. 2018)).

¶46. Like the Bar, the Court "commends . . . Bennett for her efforts in overcoming some

very difficult personal and professional circumstances[.]" But Bennett has failed to sufficiently set forth the causes for her suspension as it relates to Newell, and she has failed to meet the second and third jurisdictional requirements regarding pecuniary loss and full amends and restitution. *In re Benson*, 890 So. 2d at 890. Thus, Bennett has not shown by clear and convincing evidence that she is entitled to reinstatement. Consequently, Bennett's petition for reinstatement to the practice of law is denied.

## CONCLUSION

¶47. We find Bennett has not met the jurisdictional requirements of Rule 13 of the Rules of Discipline for the Mississippi State Bar. Accordingly, Bennett's petition for reinstatement to the practice of law is denied.

¶48. **PETITION OF CHRISTINA HUFFMAN BENNETT FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS DENIED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**